ANNE RICHARDSON [S.B. #151541]
E-mail: arichardson@hskrr.com
Randy Renick [S.B. #179652]
E-mail: rrr@hskrr.com
HADSELL, STORMER, KEENY, RICHARDSON & RENICK, LLP
128 N. Fair Oaks Ave.
Pasadena, California 91103
Telephone: (626) 585-9600; Fax: (626) 585-9610

*Counsel for Plaintiffs*
*Raudel Covarrubias, David Simmons*
*and Stephen S. Swader, Sr.*

Robert A. Cantore [S.B. #127462]
E-mail: rac@gslaw.org
Joshua F. Young [S.B. #232995]
E-mail: jyoung@gslaw.org
GILBERT & SACKMAN, A Law Corporation
3699 Wilshire Blvd., Ste. 1200
Los Angeles, California 90010-2732
Telephone: (323) 938-3000; Fax: (323) 937-9139

*Counsel for Plaintiff USW*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION - ROYBAL FEDERAL BLDG

| | |
|---|---|
| UNITED STEEL, PAPER & FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL & SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC, on behalf its members employed by defendants, and RAUDEL COVARRUBIAS, DAVID SIMMONS AND STEPHEN S. SWADER, SR., individually and on behalf of all similarly situated current and former employees, <br><br> Plaintiffs, <br><br> v. <br><br> CONOCOPHILLIPS COMPANY and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. CV08-2068 PSG (FFMx) <br><br> **INDIVIDUAL PLAINTIFFS' OPENING SUPPLEMENTAL BRIEF RE: CLASS CERTIFICATION** <br><br> Ctrm:    790 <br> Judge:  Hon. Philip S. Gutierrez <br> Date:   July 12, 2010 <br> Time:   1:30 p.m. <br><br> Date Action Filed: February 15, 2008 |

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.    INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   RELEVANT PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . 1

    A.   The Court's March 16, 2009 Order Denying Summary Judgment. . . . . . . . 1

    B.   The Court's March 16, 2009 Order Denying Class Certification . . . . . . . . 2

    C.   The Court's June 11, 2009 Order Denying Class Certification . . . . . . . . . . 3

    D.   The Ninth Circuit's January 6, 2010 Ruling on Appeal. . . . . . . . . . . . . . . 4

III.  FACTUAL SUMMARY OF THE ACTION   . . . . . . . . . . . . . . . . . . . . . . 5

IV.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    A.   Standards for Deciding A Motion for Class Certification. . . . . . . . . . . . . 10

    B.   The Proposed Class Meets All the Requirements of Rule 23 . . . . . . . . . . . 11

        1.   Numerosity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        2.   Commonality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        3.   Typicality. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        4.   Adequacy of Representation . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    C.   Certification is Warranted Under Rule 23(b)(3) . . . . . . . . . . . . . . . . . . 15

        1.   Common Issues Predominate over Individual Questions. . . . . . . . . 15

            a.   Common Issues Predominate With Respect to Plaintiffs' Claims Asserted under Section 226.7 and Wage Order 1-2001. . . . . . . . . . . . . . . . . . . . . . 16

                i.   Brinker Restaurant Corp. v. Superior Court Has No Bearing on Plaintiffs' "On-Duty" Meal Break Theory. . . . . . . . . . . . . . . . . . . . . . 16

                ii.  Brinker Does Not Plaintiffs' Alternate Theories Based on Defendant's Failure to Provide Meal Periods. . . . . . . . . . . . . . . . . . . . . . . . . 18

            b.   Common Issues Predominate as to Plaintiffs' UCL Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . 19

/ / /

/ / /

2.    A Class Action is Superior to Individual Adjudication . . . . . . . . . 22

a.    The Relevant Factors Favor Class Treatment . . . . . . . . . . . . 22

b.    Trial of the Class Claims Would be Manageable . . . . . . . . . 23

D.    Certification is Also Warranted Under Rule (b)(2). . . . . . . . . . . . . . . . . . 24

V.  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Alba v. Papa John's USA, Inc.*
2007 U.S.Dist. LEXIS 28079 (C.D. Cal. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Armstrong v. Davis*
275 F.3d 849 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Brown v. Federal Express Corp.*
249 F.R.D. 580 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Chabner v. United of Omaha Life Insurance Co.*
225 F.3d 1042 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Crawford v. Honig*
37 F.3d 485 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Dukes v. Wal-Mart Stores, Inc.*
2010 U.S.App. LEXIS 8576 (9th Cir. April 26, 2010). . . . . . . . . . . . . . . . . passim

*Hanlon v. Chrysler Corp.*
150 F.3d 1011 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 22

*Harris v. Palm Springs Alpine Estate, Inc.*
329 F.2d 909 (9th Cir. 1964). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Kamar v. Radio Shack Corp.*
254 F.R.D. 387 (C.D. Cal. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 19

*Linney v. Cellular Alaska Partnership*
151 F.3d 1234 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Local Joint Executive Board of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*
244 F.3d 1152 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re NASDAQ Market-Makers Antitrust Litigation*
169 F.R.D. 493 (S.D.N.Y. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Negrete v. Allianz Life Insurance Co. of N. America*
238 F.R.D. 482 (C.D. Cal. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Nicholson v. Williams*
205 F.R.D. 92 (E.D.N.Y. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Otsuka v. Polo Ralph Lauren Stores Corp.*
251 F.R.D. 439 (N.D. Cal. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Parra v. Bashas', Inc.*
536 F.3d 975 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**INDIVIDUAL PLAINTIFFS' OPENING SUPPL BRIEF RE: CLASS CERTIFICATION**

*Perez v. Safety-Kleen System, Inc.*
253 F.R.D. 508 (N.D. Cal. June 27, 2007)............................. 17, 18

*Tchoboian v. Parking Concepts, Inc.*
2009 U.S.Dist. LEXIS 62122 (C.D. Cal. 2009)......................... 21

*United Steel Workers v. ConocoPhillips Co.*
593 F.3d 802 (9th Cir. 2010).................................... passim

*Walters v. Reno*
145 F.3d 1032 (9th Cir. 1998)..................................... 24

*Watkins v. Ameripride Services*
375 F.3d 821 (9th Cir. 2004)...................................... 16

*White v. Starbucks Corp.*
497 F.Supp.2d 1080 (N.D. Cal. 2007)........................... 13, 20

*Wright v. Universal Maritime Serv. Corp.*
525 U.S. 70 (1998)............................................... 23

*Zinser v. Accufix Research Institute Inc.*
253 F.3d 1180 (9th Cir. 2001) .................................... 15

**STATE CASES**

*Bank of the West v. Sup. Ct.,*
2 Cal.4th 1254 (1992)......................................... 21, 22

*Brinker Restaurant Corp. v. Superior Court,*
165 Cal.App.4th 25 (2008) ................................. 18, 19, 20

*Cicairos v. Summit Logistics, Inc.*
133 Cal.App.4th 949 (2005)................................... 12, 20

*Fletcher v. Sec. Pac. National Bank*
23 Cal.3d 442 (1979)............................................ 22

*Franco v. Athens Disposal Co.*
171 Cal.App.4th 1277 (2009)..................................... 23

*Gentry v. Superior Court*
42 Cal.4th 443  (2007).......................................... 23

*Kraus v. Trinity Management Services*
23 Cal.4th 116 (2000)........................................... 21

*Mass. Mutual Life Insurance Co. v. Sup. Ct.*
97 Cal.App.4th 1282 (2002)...................................... 21

*Murphy v. Kenneth Cole Productions, Inc.*
40 Cal.4th 1094 (1992)....................................... 12, 17

**INDIVIDUAL PLAINTIFFS' OPENING SUPPL BRIEF RE: CLASS CERTIFICATION**

*Stevens v. Sup. Ct.*
  75 Cal.App.4th 594 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## FEDERAL STATUTES

Federal Rules of Civil Procedure
  23(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim
  30(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## STATE STATUTES

Bus. & Prof. Code §§ 17200 *et seq.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Industrial Welfare Commission Wage Order No. 1-2001
  § 11 (A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17
  § 11 (C). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

Labor Code
  §226.7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Code of Regulations
  §11010. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## MISCELLANEOUS

*Newberg on Class Actions*
  § 24.118. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**INDIVIDUAL PLAINTIFFS' OPENING SUPPL BRIEF RE: CLASS CERTIFICATION**

# I. INTRODUCTION

On April 26, 2010, this Court ordered supplemental briefing concerning class certification following the Ninth Circuit's decision in this action, *United Steel Workers v. ConocoPhillips Co.,* 593 F.3d 802 (9th Cir. 2010). The Court has already determined in consideration of two prior motions for class certification that Plaintiffs have met all four prerequisites for certification pursuant to Federal Rule of Civil Procedure 23(a) – numerosity, commonality, typicality, and adequate representation. Moreover, as previously presented and as set forth herein, certification is appropriate under Federal Rules of Civil Procedure 23(b)(2) and/or 23(b)(3).

The Named Plaintiffs seek certification of a class under Rule 23(b)(2) and (b)(3) for claims asserted under California Labor Code § 226.7 ("Section 226.7"), Section 11 of the Industrial Welfare Commission Wage Order No. 1-2001 ("Wage Order 1-2001"), and the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL"). The Named Plaintiffs seek certification of a class consisting of the following:

> All former, current, and future non-exempt hourly employees of Defendant ConocoPhillips who, at any time since February 15, 2004, worked as an Operator or in the laboratory on a shift schedule at a ConocoPhillips petroleum refinery located in Los Angeles, Santa Maria or Rodeo, California.

As argued below, this class definition specifies an appropriate class because all the requirements of Rule 23(a) and Rule 23(b)(2) and/or (b)(3) are satisfied. Indeed, given the common work schedule, common nature of the job and the common working conditions (i.e., all class members are required to be on duty for their entire shift), a uniform resolution of the meal period issue is appropriate.

## II. RELEVANT PROCEDURAL HISTORY

### A.    The Court's March 16, 2009 Order Denying Summary Judgment

In its First Motion for Summary Judgment, Defendant argued that its practice of providing "on-duty" meal periods was not actionable under California law because the employees were typically able to eat on the job. On March 16, 2009, this Court rejected this contention as contrary to California law. The Court held:

**INDIVIDUAL PLAINTIFFS' OPENING SUPPL BRIEF RE: CLASS CERTIFICATION**

> [I]t is clear that under California law, an employee must be relieved of all duty during the 30-minute meal period, unless the conditions permitting an "on duty" meal period are satisfied.

March 16, 2009 Order Denying Summary Judgment [Docket No. 99], pp. 6-7. The Court found that Plaintiffs presented evidence that they were *not* relieved of "all duty" during their breaks. *Id*. at pp. 7-8. The evidence described applied equally to all members of the putative class. *Id.* The Court concluded that "[b]ased on the evidence submitted, a reasonable jury could determine that Defendant failed to provide Plaintiffs with an uninterrupted meal period by relieving them of all duties." *Id.* at p. 8.

The Court also addressed whether Defendant could establish the three conditions required by IWC Wage Order 1- 2001, subd. 11(C) under which an "on-duty" meal period is permitted.[1] *Id.* at pp. 6-9. It found that in light of Defendant's admission that the class member's positions were interchangeable, the first condition concerning the "nature of the work" could not be met. *Id.* at pp. 8-9. Because Defendant has never presented any evidence of a written agreement authorizing an "on-duty" meal period, Defendant also cannot establish the second or third conditions required by Section 11(C). Finding that "Defendant has failed to establish that there is no triable issue of material fact as to whether 'the nature of the work prevents an employee from being relieved of all duty,'" the Court denied summary judgment. *Id.* at pp. 8-9.

**B.   The Court's March 16, 2009 Order Denying Class Certification**

On March 16, 2009, this Court denied without prejudice Plaintiffs' Motion for Class Certification. In its Order, the Court found that Plaintiffs met the first three prerequisites for certification pursuant to Federal Rule of Civil Procedure 23(a): numerosity, commonality, and typicality. The Court, however, denied the motion on the grounds that Plaintiffs could not meet the final requirement that the Class be adequately

---

[1] IWC Wage Order 1- 2001, subd. 11(C), provides: (1) the nature of the work must prevent the employee from being relieved of all duty during the meal period; (2) the employee and employer must have entered into a signed agreement authorizing an on-duty meal period; and (3) the signed agreement must expressly state that the employee may, in writing, revoke the agreement at any time.

**INDIVIDUAL PLAINTIFFS' OPENING SUPPL BRIEF RE: CLASS CERTIFICATION**

1   represented by counsel.  Specifically, the Court ruled that counsel for the three individual

2   plaintiffs had a conflict of interest because it also represented Plaintiff Union, United

3   Steel, Paper & Forestry, Manufacturing, Energy, Allied Industrial & Service Workers

4   International Union, AFL-CIO, CLC (" USW").  The conflict arose four days earlier on

5   March 12, 2009, when the Court granted Defendant ConocoPhillips Company's Motion

6   for Leave to File a Cross-Complaint against USW.

7          Of significance, in its March 16, 2009 order, the Court identified the viability of

8   Plaintiffs' "on duty" theory as one of the common questions of law and fact which

9   demonstrated that the commonality requirement of Rule 23(a)(2) was satisfied.  The

10  Court stated, in pertinent part:

11          Defendant contends that commonality does not exist because . . . [3] Plaintiffs' "on
            duty" meal periods theory of liability is contrary to California law.  However,
12          Defendant seemingly misinterprets the commonality requirement, particularly with
            its third point.  Whether or not Plaintiffs' theory of recovery is viable *is*, quite
13          clearly, a common question of law.  As discussed more throughly in the Court's
            order on Defendant's motion for summary judgment, Plaintiffs argue that
14          Defendant had a common policy of requiring Plaintiffs to remain "on duty" during
            their meal periods, as they were subject to interruption during meal breaks, were
15          required to carry a radio, and had to be ready to work at all times.  According to
            Plaintiffs, such an "on duty" paid meal period is permitted only under certain
16          circumstances, which were not satisfied here.  Defendant's conflicting
            interpretation of California's meal period requirements does not defeat
17          commonality.  *To the contrary, it highlights the existence of common questions of
            law and fact that are central to the resolution of the litigation.  Accordingly, the*
18          *commonality requirement is met.*

19  Docket No. 98, p. 4 (emphasis added).

20  **C.     The Court's June 11, 2009 Order Denying Class Certification**

21          On June 11, 2009, this Court denied the Renewed Motion for Class Certification on

22  the basis that the requirements of neither Rule 23(b)(2) nor (b)(3) were satisfied.  The

23  Court did, however, hold that the Named Plaintiffs had met all four requirements of Rule

24  23(a).  Specifically as to the "adequate representation" requirement of Rule 23(a)(4),

25  which the Court had previously concluded had not been met, the Court held that it had

26  been satisfied on the grounds that new class counsel was "qualified and competent" and

27  that there was "no actual conflict" presented by the cooperation between past counsel and

28

**INDIVIDUAL PLAINTIFFS' OPENING SUPPL BRIEF RE: CLASS CERTIFICATION**

1   new counsel for the Plaintiff class.[2]  Docket No. 213, p. 5.  Further, in affirming

2   "commonality" under Rule 23(a)(2) had been met, the Court reiterated that the conflict

3   between Defendant's interpretation of California's meal period requirements and

4   Plaintiffs' "on duty" meal periods theory "highlights the existence of common questions

5   of law and fact that are central to the resolution of the litigation."  Docket 213, p. 4.

6          The Court, however, held that Rule 23(b)(3) was not satisfied on the ground that *if*

7   Plaintiffs' "theory of liability fails, then common questions will no longer predominate

8   over individual ones."  Docket No. 213, p. 6.  Although the Court determined that "the

9   existence of a uniform policy as to the availability of a meal period could be proved on a

10  classwide basis," *id.* at p. 6, the Court reasoned that if Plaintiffs ultimately were unable to

11  show that Defendant's practice violated California law, individual questions would

12  predominate and the case would become unmanageable, *id.* at pp. 6-7.  Based on this

13  reasoning, the Court held that the possibility that Plaintiffs might lose on this common

14  question of law was an "insurmountable barrier" to class certification.  *Id.* at p. 7.

15         The Court also held that certification under Rule 23(b)(2) was not warranted.  *Id.* at

16  p. 8.  The Court stated that it was not confident that the "primary relief" sought by

17  Representative Plaintiffs and the Class was injunctive in nature, and that it was unclear

18  which putative class members were still employed in the positions at issue and which

19  Representative Plaintiffs had standing to seek the injunctive relief requested.  *Id.*

20  **D.     The Ninth Circuit's January 6, 2010 Ruling on Appeal**

21         Plaintiffs appealed the Court's June 11, 2009 order denying their Renewed Motion

22  for Class Certification. *United Steel Workers v. ConocoPhillips Co.,* 593 F.3d 802, 803

23  (9th Cir. 2010).  Plaintiffs argued that the Court had abused its discretion by declining

24  certification "based on the *possibility* that plaintiffs would not prevail on the merits on

25  their 'on duty' theory." *Id.* at 808.  The Ninth Circuit agreed with Plaintiffs, finding that

26  _____

27         [2]  In April 2009, Named Plaintiffs retained Hadsell Stormer Keeny Richardson &
28  Renick, LLP, counsel who are highly capable and have extensive experience in prosecuting
    wage and hour class action cases, such as the present.  Renick Dec, ¶ 5; Ex. 4.

**INDIVIDUAL PLAINTIFFS' OPENING SUPPL BRIEF RE: CLASS CERTIFICATION**

1  a court may not "decline to certify the class on the basis of a mere potentiality that may or
2  may not be realized." *Id.* at 810.  The Ninth Circuit determined that this Court had erred
3  by not considering whether plaintiffs' *actual* legal theory "was one in which common
4  issues of law or fact did not predominate over individual questions," and by instead
5  concluding that the Rule 23 requirements were not met because "there can be no
6  *assurances* that [plaintiff] w[ould] prevail on this theory." *Id.* at 808.

7      The Ninth Circuit remanded to this Court for reconsideration of Plaintiffs' Motion
8  for Class Certification in light of its decision.  *Id.* at 810.

9  **III. FACTUAL SUMMARY OF THE ACTION**

10      ConocoPhillips owns and/or operates three petroleum refineries located in Los
11  Angeles, Santa Maria, and Rodeo, California ("the Refineries").  *See* Complaint filed
12  February 15, 2008 ("Compl."), ¶ 9.  The Refineries operate three-hundred and sixty-five
13  days a year, twenty-four hours a day.  Covarrubias Dec., ¶ 2; Muto Dec., ¶ 3; Bowman
14  Dec., ¶ 2; Swader Dec., ¶ 4; Prosser Dep., 48:1-8.[3]

15      Plaintiff Raudel Covarrubias is currently employed as an Operator at the Los
16  Angeles refinery.  Covarrubias Dec. and Supp. Dec.,¶ 1. Plaintiff Stephen Swader, Sr., is
17  currently employed as an Operator at the Santa Maria refinery.  Swader Dec. and Supp.
18  Dec., ¶1.  Plaintiff David Simmons is employed as an Operator at the Los Angeles
19  refinery, though his most recent assignment is to act as the Union's Health & Safety
20  Representative. Simmons Dec. and Supp. Dec., ¶ 1.

21      Because the refining of crude oil is a continuous production process, Defendant
22  needs employees to operate and/or monitor the process at all times.  Prosser Dep., 61:21-
23  64:4.  The collective bargaining agreement that covers Plaintiffs' employment at the
24  Refineries contains an Operator job classification.  Prosser Dep., 21:8-14.  Individuals
25  working as Operators at the Refineries are "shift employees" or "shift workers."  Norris
26  Dec., ¶ 3; Muto Dec., ¶ 3.  Although some Operators work eight hour shifts, most of the

27
28      [3]  Patrick Prosser is Defendant's Human Resources Manager.  Prosser Dep., 9:12-14.  Prosser testified as Defendant's corporate representative under Fed.R.Civ.P. 30(b)(6).

5

Operators work twelve hour shifts.  Norris Dec., ¶ 3; Covarrubias Dec., ¶ 2; Bowman Dec., ¶ 2; Muto Dec., ¶ 3; Swader Dec., ¶ 3; Prosser Dep., 48:23-49:9.  Regardless of the duration of their shifts, all Operators are treated the same way with respect to meal periods.  Norris. Dec., ¶ 3.  The twelve hour shifts are from 6:00 a.m. to 6:00 p.m. (Day Shift) and 6:00 p.m. to 6:00 a.m. (Night Shift). Muto Dec., ¶ 2; Covarrubias Dec., ¶ 3; Norris Dec., ¶ 3; Simmons Dec., ¶ 2; Swader Dec., ¶ 3; Prosser Dep. 48:23-49:9. Operators working these shifts are paid for twelve hours of work during that period of time.  Prosser Dep., 49:5-9.  ConocoPhillips keeps records of the Operators' time through a software program which is integrated with a timekeeping system.  Prosser Dep., 100:20-101:16.  For each shift an Operator is scheduled to work, a supervisor will enter 12 hours into the timekeeping system and the Operator is paid for all hours scheduled.  Prosser Dep., 101:20-102:16.

The general duties of Operators are the same at all of the Refineries.  Prosser Dep. 27:10-28:14; Bowman Dec., ¶ 2. Although there are two types of Operators at the Refineries, Console or Board Operators and Field Operators, all Operators monitor the same equipment and processes and they essentially conduct the same type of work. Prosser Dep., 27:10-28:14; Muto Dec., ¶¶ 5-7; Covarrubias Dec., ¶¶ 3-4; Norris Dec., ¶¶ 5-7; Swader Dec., ¶ 6.  All Operators are responsible for monitoring tank, tower and oil levels, temperatures for equipment and processes, flows for processes and lubrication, and pressure readings for different processes and equipment.  Covarrubias Dec., ¶ 3; Bowman Dec., ¶ 2; Swader Dec., ¶ 5; Muto Dec., ¶ 4; Norris Dec., ¶ 4.  All Operators also make adjustments to processes and equipment as needed.  Norris Dec., ¶ 4; Covarrubias Dec., ¶ 3; Simmons Dec., ¶ 2; Muto Dec., ¶ 4; Swader Dec., ¶ 5.  All Operators gather and work out of a control building.  Prosser Dep., 59:2-8.

The main difference between Field Operators and Board Operators is that Board Operators monitor information and make adjustments to processes from a computer console while Field Operators normally make manual adjustments to the production process from the field.  Norris Dec., ¶¶ 5-6; Covarrubias Dec., ¶¶ 3-4;  Muto Dec., ¶¶ 5-6;

1   Swader Dec., ¶¶ 6-7.  Specifically, Board Operators remain within the control building

2   facility and monitor the process from within that facility.  Prosser Dep., 59:9-14.  Field

3   Operators and Board Operators constantly coordinate their activities and they work

4   together as a team to ensure that the refining process is working efficiently.  Muto Dec., ¶

5   7; Swader Dec., ¶ 8; Simmons Dec., ¶¶ 2-3; Covarrubias Dec., ¶ 4; Norris Dec., ¶ 6.

6   　　　All Operators working a shift schedule are under the same shift supervision, have

7   the same work rules applied to them, are covered under the same bargaining agreement

8   and are treated the same with respect to meal periods.  Muto Dec., ¶ 7;  Swader Dec., ¶

9   10; Norris Dec., ¶ 9; Covarrubias Dec., ¶ 6; Simmons Dec., ¶ 4.

10   　　　Operators remain "on duty" during the entirety of their shifts.  Prosser Dep., 62:20-

11   24; Muto Dec., ¶ 9; Swader Dec., ¶ 11; Norris Dec., ¶ 10; Bowman Dec., ¶ 3; Simmons

12   Dec., ¶ 5; Covarrubias Dec., ¶ 6.  Operators are also in constant "radio communication"

13   throughout their shift so that they can respond to any problems that arise during their

14   shift.  Prosser Dep., 66:11-14.  Operators have responsibility to stay "in communication"

15   during their shift, and are expected to have a radio with them.  Prosser Dep., 83:4-13,

16   95:5-12.  Operators are subject to discipline for not responding to their radio.  Prosser

17   Dep., 94:5-12.  Operators must remain within their units during the entirety of their shifts

18   unless they are given permission to leave the unit by the head operator.  Prosser Dep.,

19   61:12-63:16, 109:22-110:9.  Therefore, Operators are not allowed to leave the Refinery or

20   their units to take a meal break.  Prosser Dep., 62:1-64:1.  Rather, if and when operators

21   eat during their shifts, they are required to eat in their unit.  Prosser Dep., 62:5-64:21.

22   　　　Because Operators are on duty throughout the entirety of their shift,

23   ConocoPhillips does not provide Operators with a 30 minute meal period during which

24   they are relieved of all duties and no one ever actually times how long an operator gets to

25   eat a meal.  Muto Dec., ¶ 9; Norris Dec., ¶ 10; Covarrubias Dec., ¶ 8; Simmons Dec., ¶ 5;

26   Swader Dec., ¶ 13; Prosser Dep., 81:2-23.  There is no "formalized procedure" for

27   providing Operators with either a first or second meal period.  Prosser Dep., 122:6-19.

28   Operators working a twelve hour shift receive neither a first nor second meal period

1   during which they are relieved of all duties.  Muto Dec., ¶ 9; Norris Dec., ¶ 10; Bowman

2   Dec., ¶ 3; Simmons Dec., ¶ 5; Swader Dec., ¶ 11; Covarrubias Dec., ¶ 8.  Operators

3   working an eight hour shift do not receive a 30 minute meal period during which they are

4   relieved of all duties.  Muto Dec., ¶ 9; Norris Dec., ¶ 10; Simmons Dec., ¶ 5; Swader

5   Dec., ¶ 11; Covarrubias Dec., ¶ 8. No written policy exists that sets forth a meal period

6   for Operators, ConocoPhillips does not keep any records of when Operators eat during

7   their shifts, and there is no practice or custom of providing Operators with a 30 minute

8   meal period during which they are relieved of all duties.  Muto Dec., ¶ 9; Swader Dec., ¶

9   12; Norris Dec., ¶ 10; Covarrubias Dec., ¶ 8; Bowman Dec., ¶ 3; Simmons Dec., ¶ 5;

10  Prosser Dep., 115:1-8.  There is no Operator at any of the Refineries whose job it is to

11  relieve Operators for meal periods.  Prosser Dep., 86:22-87:2.

12      All Operators are supervised by area supervisors or foremen.  Muto Dec., ¶ 8;

13  Covarrubias Dec., ¶ 7; Norris Dec., ¶ 8 Swader Dec., ¶ 9.  There are no separate lines of

14  supervision of Field and Console Operators and the supervisors apply the same work

15  rules to all Operators.  Muto Dec., ¶ 8; Covarrubias Dec., ¶¶ 6-7; Norris Dec., ¶ 8; Swader

16  Dec., ¶ 9; Simmons Dec., ¶ 4.  The supervisors do not provide Operators with a 30 minute

17  meal period during which they are relieved of all duties.  Muto Dec., ¶ 9; Swader Dec., ¶

18  11.  The supervisors are not instructed to designate a time for during with employees must

19  take breaks and meal period as the employees take their meal breaks when they find it

20  convenient for themselves.  Prosser Dep., 143:1-10.

21      Laboratory Workers manage the quality control of the refinery process.  Prosser

22  Dep., 32:11-17.  Laboratory Workers will analyze the samples that are provided to them

23  by Operators and run tests on those samples in the laboratories that are on-site.  *Id.*

24  Laboratory Workers working a "shift schedule," or a twelve hour shift, work from 6:00

25  a.m. to 6:00 p.m. and are paid for twelve hours of work.  Prosser Dep., 47:13-18, 51:3-8,

26  88:24-89:4.

27      The same "on-duty" meal period which applies to Operators also applies to

28  Laboratory Workers, who are required to remain at the refinery for their entire shift and

1    are not provided a designated meal period.  Defendants' written policy states "Shift

2    workers have no designated lunch break as they work a straight ten or twelve-hour

3    schedule."  Because Laboratory Workers are subject to the same "on-duty" meal period,

4    they have consented to representation by the Named Plaintiffs. Allen Dec. ¶¶ 8-13,

5    Renick Dec, ¶ 28; Ex. 27.; Harris Dec.¶¶ 8- 11; Abbas Dec.¶¶ 8- 11; Goldman Dec. ¶¶ 8-

6    11; Pillen Dec. ¶¶ 8- 11; Macias Dec. ¶¶ 8- 11; Friichtenicht Dec.¶¶ 8- 11; McFetridge

7    Dec.¶¶ 8- 11; Melendez Dec. ¶¶ 8- 11; Basco Dec. ¶¶ 8- 11; Obeng Dec. ¶¶ 8- 11; and

8    Graves Dec. ¶¶ 8- 11.

9         Operators and Laboratory Workers cannot plan for or take uninterrupted meal

10   breaks as they are constantly required to respond to audible alarms which indicate that

11   something in the refining process needs attention.  Prosser Dep., 78:2-12; Norris Dep.,

12   57:14-58:6; Simmons Dep., 41:13-15.  The alarms, including so called "nuisance alarms,"

13   require immediate attention and go off as often as 5 times in 10 minutes.  Swader Dep.,

14   73:4-23. Operators are not allowed to leave their units to take a meal break.  Prosser Dep.,

15   62:6-64:4.  Nor are they typically able to take more than 10 or 15 minutes to eat, and what

16   breaks they do take are often interrupted. Covarrubias Dep., 35:15-36:16; Swader Dep.,

17   49:12-22.

18        ConocoPhillips has not requested that any collective bargaining unit employees

19   sign a document waiving any meal period or agreeing to an "on duty" or "on the job"

20   meal period.  Muto Dec., ¶ 11; Covarrubias Dec., ¶ 10; Swader Dec., ¶ 14; Norris Dec., ¶¶

21   11-12.  ConocoPhillips and USW had never entered into an agreement regarding "on

22   duty" meal periods.  Muto Dec., ¶ 12; Swader Dec., ¶ 15.  No Refinery employees have

23   ever signed any agreement to waive meal periods.  Prosser Dep., 132:2-133:1.

24   ConocoPhillips does not post any wage orders at the Refineries.  Prosser Dep., 135:1-3.

25        ConocoPhillips and certain employees at the Los Angeles, Rodeo, and Santa Maria

26   refineries, entered into collective bargaining agreements ("CBAs") setting forth some of

27   the terms and conditions of employment for those employees.  ConocoPhillips'

28   Counterclaim Against USW [Docket No. 96], ¶ 16.  The term of the first agreement was

**INDIVIDUAL PLAINTIFFS' OPENING SUPPL BRIEF RE: CLASS CERTIFICATION**

February 1, 2002, to January 31, 2006, and the second, February 1, 2006, to January 31, 2009.  *Id.*  The agreements were silent as to meal breaks, except where employees worked a shift of more than 10 or 16 hours.  Ex. 3, pp. 11-12; Prosser Dep., 133:2-13.

On February 6, 2009, ConocoPhillips tendered a last, best and final offer for a successor CBA, effective February 1, 2009 ("2009 CBA").  Ex. 3.  While the agreement characterizes meal breaks for "Operators" as "on-duty," Ex. 3, p. 49-50, it expressly excludes from its dispute resolution process any "issues involving company compliance with any local, state, Federal law or regulation, or questions involving interpretation of the same, regardless if such laws are referenced by the Agreement." Renick Dec., ¶ 4; Ex. 3, p. 22 [Prop. 18]. While the Union never agreed to the 2009 CBA, it was subsequently ratified by the membership and is now in effect.

## IV. ARGUMENT

### A.    Standards for Deciding A Motion for Class Certification

In *Dukes v. Wal-Mart Stores, Inc.*, 2010 U.S. App. LEXIS 8576, at *55-*56 (9th Cir. Apr. 26, 2010), an *en banc* panel of the Ninth Circuit recently reiterated the proper standards governing the adjudication of a Rule 23 motion for class certification.  First, the court "must, perform a rigorous analysis to ensure that the prerequisites of Rule 23 have been satisfied," which "will often, though not always, require looking behind the pleadings to issues over-lapping with the merits of the underlying claims." *Dukes*, 2010 U.S. App. LEXIS 8576 at *55-*56.  Second, the court "may not analyze any portion of the merits of a claim that do not overlap with the Rule 23 requirements" as this analysis is for the purpose of "determining that each of the Rule 23 requirements has been satisfied." *Id.* at *56.  Third, the court "must keep in mind that different parts of Rule 23 require different inquiries." *Id.*  Fourth, the court retains "wide discretion in class certification decisions, including the ability to cut off discovery to avoid a mini-trial on the merits at the certification stage." *Id.* at *56-*57.  Fifth and last, "different types of cases will result in diverging frequencies with which the district court will properly invoke its discretion to abrogate discovery." *Id.* at *57.  Applying these standards, the alleged facts and

evidence supporting Plaintiffs' claims demonstrate that this case is well-suited for resolution on a classwide basis.

## B.   The Proposed Class Meets All the Requirements of Rule 23

Under Rule 23, the Court should certify a proposed class when the class meets all the prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and at least one of the requirements of Rule 23(b).  All four Rule 23(a) prerequisites and the requirements for class certification under Rule 23(b)(2) and/or (b)(3) are satisfied in this case.  Because class certification is permissible under both 23(b)(2) and (b)(3), the Court may choose to order certification under both sub-parts, or just one of those provisions.  *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 515 (S.D.N.Y. 1996) (dual certification is permissible).  This Court has already ruled that Plaintiffs have satisfied all four of the Rule 23(a) prerequisites.  June 11, 2009 Order [Docket No. 213], pp. 2-5.  *See also United Steel Workers,* 593 F.3d at 807.  The Court should affirm its prior rulings as to Rule 23(a).

### 1.   Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  However, "[i]mpracticability does not mean 'impossibility', but only the difficulty or inconvenience in joining all members of the class."  *Harris v. Palm Springs Alpine Estate, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964).  There are approximately six hundred (600) members in the proposed Class.  Prosser Dep., 112:7-113:15.  Therefore, the size of the Class makes joinder impracticable.

### 2.   Commonality

Rule 23(a)(1) requires that "'there are questions of law or fact common to the class.'  Commonality focuses on the relationship of common facts and legal issues among class members."  *Dukes*, 2010 U.S. App. LEXIS  8576 at *72.  "The commonality requirement is generally construed liberally as the existence of only a few common legal and factual issues may satisfy the requirement."  *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 488 (C.D. Cal. 2006).  This requirement is "qualitative rather than

quantitative," *Dukes*, 2010 U.S. App. LEXIS 8576 at *73, as "there must only be one single issue common to the class." As this Court has previously ruled, the commonality requirement is satisfied here. Docket No. 213, p. 4; Docket No. 98, p. 4.

Each class member was employed in one of Defendant's Refineries and were not relieved of all duties during meal periods as required under California law. As such, there are numerous questions of law and fact common to the Class including, *inter alia*, the following:

a. Whether Named Plaintiffs and members of the Class are covered by a valid on-duty meal agreement in accordance with California law;

b. Whether the nature of the work of Named Plaintiffs and members of the Class prevents them from being relieved of all duties during meal periods;

c. Whether Defendant failed to provide Named Plaintiffs and members of the Class with meal periods in accordance with California law when Named Plaintiffs and members of the Class are on duty during the entirety of their shift;

d. Whether Defendant maintains or has maintained common policies that failed to properly compensate Named Plaintiffs and members of the Class for missed meal periods;

e. Whether the Defendants failed to keep accurate records of the meal periods provided to Named Plaintiffs and members of the Class in accordance with applicable California law; and

f. Whether the Plaintiffs and class members are entitled to an injunction requiring Defendant to adopt a meal period policy consistent with California law.

It is undisputed that Named Plaintiffs and class members are not relieved of their duties during meal periods. Under California law, employees must be allowed not just the opportunity to eat, but the opportunity to eat while relieved of all job responsibilities.

In interpreting IWC's wage orders, courts specifically require "meal periods" to be duty free: "Pursuant to IWC wage orders, employees are entitled to an unpaid 30-minute, *duty-free* meal period after working for five hours." *Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal. 4th 1094, 1104 (2007) (emphasis added); *see also Cicairos v. Summit Logistics, Inc.*, 133 Cal. App. 4th 949, 962 (2005) (an employer has "an

affirmative obligation to ensure that workers are actually relieved of all duty"); *White v. Starbucks Corp.*, 497 F. Supp. 2d 1080, 1089 (N.D.Cal. 2007)(California law imposes affirmative obligation on employer to relieve workers of all duty during meal breaks).

Section 11(C) of Wage Order 1-2001 is quite clear: "Unless [an] employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an 'on duty' meal period and counted as time worked." Section 11(C) sets forth the one exception when an "on duty" meal period is allowed: "An 'on duty' meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to." No such exception applies here. Moreover, any dispute as to whether the Section 11(C) exception applies, or Plaintiffs' interpretation of the law, further supports class treatment. *See* Docket No. 213, p. 4; Docket No. 98, p. 4.

### 3.    Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties be typical of the claims or defenses of the class." This requirement is satisfied if the representatives' claims "are reasonably coextensive with those of absent class members [as] they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). As long as both the plaintiffs' and class members' claims arise from the same course of conduct and are based on the same legal theory, typicality is shown. *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001). As this Court has previously ruled, the typicality requirement is satisfied here. Docket No. 213, p. 4; Docket No. 98, pp. 4-5.

The Named Plaintiffs' claims are typical of those at each of Defendant's facilities in California as Named Plaintiffs and class members alike were all denied "30 minute, *duty-free* meal periods" throughout. The undisputed testimony is that Named Plaintiffs and all class members worked a continuous shift (i.e., no period during which they were relieved of all duties). Further, Defendant made no affirmative effort to relieve them of their duties for two 30-minute meal periods. Thus, if Defendant's conduct violates the

meal period laws because it failed to provide class members with 30-minute duty-free

meal periods and/or did not take affirmative steps to provide them with such meal

periods, then Named Plaintiffs and other class members suffered the same injury.

Moreover, if Named Plaintiffs prove Defendant is liable, they are entitled to the same

remedies as all class members, and injunctive relief will affect them in a similar manner.

The typicality requirement is also satisfied in a case where, as here, injunctive and

declaratory relief is a significant aspect of the case. *See Nicholson v. Williams*, 205

F.R.D. 92, 99 (E.D.N.Y. 2001) ("Typicality may be assumed where the nature of the relief

sought is injunctive and declaratory.")  This is true even where, as here, the relief sought

includes a damages component. *See Dukes*, 2010 U.S. App. LEXIS  8576 at *128-*137

(holding that the size of plaintiffs' damages request and request for back-pay did not

undermine plaintiffs' claim that injunctive and declaratory relief predominate).

### 4.    Adequacy of Representation

Rule 23(a)(3) permits class certification if "the representative parties will fairly and

adequately represent the interests of the class."  This element of class certification has

two parts: (1) Plaintiffs' interests must not conflict with those of absent class members,

and (2) Plaintiffs are represented by qualified and competent counsel. *Dukes*, 2010 U.S.

App. LEXIS  8576 at *118-*119.  As this Court has previously ruled, the adequacy of

representation requirement is satisfied here.  Docket No. 213, pp. 4-5.

There are no irreconcilable conflicts of interest or antagonistic interests between

Plaintiffs, counsel and class members.  Plaintiffs and each class member have a strong

interest in establishing Defendant's liability and determining whether Defendant violated

California law, and they share interests both in being compensated for unpaid wages and

in deterring such conduct in the future.  Since there is no evidence that this lawsuit is

collusive or of any substantial antagonism between the class members, Plaintiffs are

adequate class representatives. *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994).

In April 2009, Named Plaintiffs retained Hadsell Stormer Keeny Richardson &

Renick, LLP ("HSKRR"), whose attorneys are highly capable and have extensive

experience in prosecuting wage and hour class action cases, such as the present.  *See* Renick Dec., ¶ 5.  HSKRR does not represent any other parties in this litigation and meets the requirements of Rule 23(g).  They have shown they are capable of, and have committed substantial resources to, representing the Class and are fully committed to vigorously prosecute this action on the Class' behalf.  Renick Dec, ¶ 5.  Further, any argument that continued representation by previous counsel constitutes inadequate representation, has already been rejected by the Ninth Circuit and this Court.  Docket No. 213, p. 5 (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

## C.   Certification is Warranted Under Rule 23(b)(3)

Once the requirements of Rule 23(a) are satisfied, Rule 23(b)(3) permits class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Both of these requirements are satisfied in this action.

### 1.   Common Issues Predominate over Individual Questions

The Rule 23(b)(3) predominance inquiry tests whether the proposed class is "sufficiently cohesive to warrant adjudication by representation."  *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001); *accord Hanlon*, 150 F.3d at 1022.  "To establish predominance of common issues, a party seeking class certification is not required to show that the legal and factual issues raised by the claims of each class member are identical."  *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008).  Rather, the inquiry focuses on "the notion that the adjudication of common issues will help achieve judicial economy."  *Zinser v. Accufix Research Inst. Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) (internal quotations omitted).  The Ninth Circuit and the Supreme Court have cautioned, however, that "a full inquiry into the merits of a putative class's legal claims," which would be necessary for a court to be assured that a plaintiff will prevail on the claims, is not appropriate for a Rule 23 certification inquiry.  *United Steel Workers,* 593 F.3d at 809.  Rather, at this stage, the

**INDIVIDUAL PLAINTIFFS' OPENING SUPPL BRIEF RE: CLASS CERTIFICATION**

Court should consider whether plaintiffs' *actual* legal theories are ones in which common issues of law or fact predominate over individual questions, and not whether Plaintiffs will ultimately prevail on their theories.  *See id.*

Here, Plaintiffs' claims can be proven on a classwide basis with proof that is common to all class members; thus, common issues of law and fact predominate over individual issues and the Rule 23(b)(3) requirement has been met.  In fact, this Court has already determined that "the existence of a uniform policy as to the availability of a meal period could be proved on a classwide basis."[8]  Docket No. 213, p. 6.  This finding alone is a sufficient basis for the Court to find that common issues predominate.

> ### a.   Common Issues Predominate With Respect to Plaintiffs' Claims Asserted under Section 226.7 and Wage Order 1-2001

Plaintiffs allege that Defendant failed to provide Named Plaintiffs and class members with meal periods as required under the California Labor Code and in Wage Orders promulgated by the Industrial Welfare Commission ("IWC").[9]  California Labor Code section 226.7 provides that "[n]o employer shall require any employee to work during any meal or rest period" mandated by an IWC Wage Order, and that if the employer fails to provide the required meal period or rest period, "the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided." Cal. Labor Code § 226.7 (a), (b).  Section 11(A) of Wage Order 1-2001 includes the following provision:

---

[8]  The Court, nonetheless, concluded in its June 11, 2009 order that "the amount of damages to which [a class member] would be entitled, would be highly individualized, requiring individualized, mini-trials for each class member." Docket No. 213, p. 6. "The amount of damages is invariably an individual question and does not defeat class treatment." *Parra v. Bashas', Inc.*, 536 F.3d 975, 979 (9th Cir. 2008).  *See also Alba v. Papa John's USA, Inc.*, 2007 U.S. Dist. LEXIS 28079 at *40 (C.D. Cal. 2007) (same).

[9]  IWC wage orders are "quasi-legislative regulations that are to be interpreted in the same manner as statutes."  *Watkins v. Ameripride Servs.*, 375 F.3d 821, 825 (9th Cir. 2004).

**INDIVIDUAL PLAINTIFFS' OPENING SUPPL BRIEF RE: CLASS CERTIFICATION**

> No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee.

8 Cal. Code Regs. §11010, §11(A).  Section 11(C) of the same wage order then provides:

> *Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an "on duty" meal period and counted as  time worked.* An "on duty" meal period shall be permitted only when the *nature of the work prevents an employee from being relieved of all duty* and when by written agreement between the parties an on-the-job paid meal period is agreed to. *The written agreement shall state that the employee may, in writing, revoke the agreement at any time.*

8 Cal. Code Regs. §11010(11)(C) (emphasis added).

The Named Plaintiffs contend that the practice violates California law because employers subject to Section 226.7 and Wage Order 1-2001 have, at minimum, a mandatory obligation to provide qualifying employees with an opportunity to take duty-free meal periods.  *See Brown*, 249 F.R.D. at 586 (employers have "an obligation to make [meal] breaks available"); *Perez v. Safety-Kleen Systems*, 2007 U.S. Dist. LEXIS 48308 at *21 (N.D. Cal. June 27, 2007) ("At the very least, … the Wage Order requires the employer to affirmatively provide a meal break and provide the opportunity for the employee to be 'relieved of all duty during a 30 minute period.'").

Common issues predominate as to the claims alleged on behalf of the Class under Section 226.7 and Wage Order 1-2001 as these claims can be proven on a classwide basis with proof that is common to all class members.  First, as noted above, it is undisputed that Named Plaintiffs and class members are required to eat meals while on duty and that Defendant makes no effort to relieve them of their job duties during that time (or at any other time during their shifts).  If this practice violates California law, then Defendant is liable to Named Plaintiffs and all class members and owes them one extra hour of pay for every day that a duty-free meal period was not provided.  *See* Cal. Labor Code §226.7(b); 8 Cal. Code Regs. §11010(11)(B); *Murphy,* 40 Cal.4th at 1104.

Moreover, the declarations and testimony establish that all Operators and Lab Workers work under the same shift supervision and work rules, and that they are treated

the same with respect to meal periods.  The Named Plaintiffs and class members are required to remain in their units while eating during their shifts.  They are not allowed to turn off radios and must remain in communication during the entire shift (including while eating a meal).  Indeed, the employer maintains kitchen facilities in the control buildings of each unit; a practice which allows employees to remain on duty in the event they are needed while eating.  Finally, they are required to respond to interruptions involving routine work assignments.  *See Perez v. Safety-Kleen Sys., Inc.*, 253 F.R.D. 508, 516 (N.D. Cal. 2008) (triable issue of fact exists as to whether plaintiffs were relieved of all duty during breaks or were required to be available to work at all times).

Because these common facts show that Named Plaintiffs and class members were not relieved of their duties during meals, the alleged violation of California's meal period law results from Defendant's uniform practice.  Thus, common issues predominate over any individual issues.  *See Brown v. Federal Express Corp.*, 249 F.R.D. 580, 584 (C.D. Cal. 2008) (holding plaintiffs can prevail on certification motion if "they demonstrate that [defendant's] policies deprived them of [meal] breaks").

> **i.**   ***Brinker Restaurant Corp. v. Superior Court* Has No Bearing on Plaintiffs' "On-Duty" Meal Break Theory**

In its Opposition, Defendant will likely again rely on the "logic" of *Brinker Restaurant Corp. v. Superior Court*, 165 Cal. App. 4th 25 (2008), *review granted and opinion superseded* (Oct. 22, 2008), for the proposition that a class cannot be certified because individual issues predominate.  On the contrary, even if *Brinker* were affirmed in its entirety, 23(b)(3) certification of the claims here would still be warranted.

Plaintiffs contend that the "on duty" meal breaks provided to class members do not constitute "meal periods" under California law.  Since all class members were denied an off-duty meal period on every shift they worked because they were required to perform work for their entire shift, there are no individualized issues.  This Court already determined that the issue is not whether or not individual employees received time to eat, but rather, whether Defendant complied with Wage Order 1-2001 by relieving them of

their duties for 30-minute meal periods.  Docket No. 99, pp. 6-7. In denying summary judgment, the Court specifically held that this is the case "regardless of whether California law mandates that an employer affirmatively ensure that employees take meal breaks, or merely requires the employer to authorize or permit a break." *Id.* at p. 7.

The primary common issue that needs to be resolved is thus whether Defendant's "on-duty" meal period policy, which applies to every class member for every shift, was lawful.  In cases such at this, where "the claim is that an employer's policy and practices violated labor law, the key question for class certification is whether there is a consistent employer practice that could be a basis for consistent liability." *Kamar*, 254 F.R.D. at 399.  Where the employer's uniform policy is uniformly implemented, "predominance is easily established. . . . [but] the existence of certain individualized or deviating facts will not preclude certification if most class members were subjected to a company policy in a way that gives rise to consistent liability or lack thereof." *Id.* (citations omitted).

As was clear from the Court's order denying summary judgment, whether plaintiffs were "on-duty" during their meals is a classwide legal issue, that is susceptible of classwide factual proof about key job characteristics, including: 1) whether employees were expected to carry their radio and maintain communications during their meals; 2) whether employees could be disciplined for not responding to a radio command, even during their meals; 3) whether employees must be on site during their entire 12-hour shift, unless they have permission to go to another part of the refinery; 4) whether the oil refinery process requires constant monitoring and, if so, the role that operators play in such monitoring; and 5) whether there is a relief system or other procedure in place to relieve employees for their meal breaks.  Docket No. 99, pp. 7-8.

### ii.   *Brinker* Does Not Plaintiffs' Alternate Theories Based on Defendant's Failure to Provide Meal Periods

Plaintiffs' second theory in support of their meal break claim is that Defendant has failed to provide the requisite meal breaks because it has an *affirmative* obligation under the law to ensure that employees are actually relieved of all duty during requisite 30-

minute meal breaks (one meal break for the first 10 hours worked and a second break after that).  This theory is based on a number of cases, including *Cicairos, supra*, 133 Cal.App.4th at 962 ("employers have 'an affirmative obligation to ensure that workers are actually relieved of all duty,'" quoting DLSE Opinion Letter No. 2002-01-28, p.1).

Alternatively, Plaintiffs assert that Defendant had a policy or practice of *knowingly* failing to provide meal breaks.  In this way, this case is similar to *Cicairos.*  In *Cicairos*, the plaintiffs were truck drivers whose employers monitored their trucks via a computer which allowed them to keep track of various aspects of the drivers' activities, such as speed, starts and stops, and times.  Despite this intimate knowledge of the drivers' activities, the employer "did not schedule meal periods, include an activity code for them, or monitor compliance."  133 Cal. App. 4th at 962.  Under these circumstances, the employer's "obligation to provide the plaintiffs with an adequate meal period is not satisfied by assuming that the meal periods were taken."  *Id.  See also White v. Starbucks Corp.*, 497 F. Supp. 2d 1080, 1089 (N.D.Cal. 2007) (distinguishing *Cicairos* from *Brinker* cases because evidence showed a *knowing* failure to provide breaks).

The factual issues relevant to this legal theory are plainly susceptible to classwide proof, because they are largely resolved by examining Defendant's own practices.  The record shows that Defendant well knows that its employees are chained, figuratively, to their monitors, either by staying within ear's reach of the monitors, or within radio contact of their co-workers, so that they can always respond to an alarm and are thus always "on duty."  Similarly, although Defendant has a centralized timekeeping system and an obligation under the law to provide meal breaks, it does nothing to schedule such breaks, provide relief workers, or even to record that they were taken.  There is also classwide evidence that Defendant discourages its employees from taking duty-free meal breaks, including that class members are obligated to remain on their units and to respond to calls and that failure to do so can result in discipline.

A claim that an employer has a policy or practice of preventing or discouraging meal breaks is properly certified based on classwide evidence of the employer's practice

**INDIVIDUAL PLAINTIFFS' OPENING SUPPL BRIEF RE: CLASS CERTIFICATION**

and the common question of whether the practice violates the law. *Otsuka v. Polo Ralph Lauren Stores Corp.*, 251 F.R.D. 439, 447 (N.D.Cal. 2008). While there may be individual questions about whether certain employees were able to take some breaks despite Defendant's deterring practice or why they missed breaks, "these individual questions are secondary to the larger questions raised about whether defendants had an overall policy with regard to [meal] breaks and whether they are liable for missed [meal] breaks regardless of the reasons they were missed." *Id. See also Tchoboian v. Parking Concepts, Inc.*, 2009 U.S. Dist. LEXIS 62122, *20-*21 (C.D. Cal. 2009) (determining common issues predominate does not require finding that there are no individual issues).

### b.   Common Issues Predominate as to Plaintiffs' UCL Claims

UCL claims are appropriate for class treatment as the California Supreme Court has repeatedly held that relief under the UCL is available without "individualized proof of deception, reliance, and injury[.]" *Bank of the West v. Sup. Ct.*, 2 Cal. 4th 1254, 1267 (1992); *Mass. Mut. Life Ins. Co. v. Sup. Ct.*, 97 Cal. App. 4th 1282, 1289-95 (2002) (certifying UCL and CLRA claims arising out of deceptive product sales based on omissions of material facts even where transactions involved face-to-face sales presentations). The UCL's unlawful prong borrows violations of other statutes such as the California Labor Code and orders of the California Industrial Welfare Commission and makes them independently actionable. *See Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000); *Stevens v. Sup. Ct.*, 75 Cal. App. 4th 594, 606 (1999) (statutory violations may form basis under UCL). Thus, if Plaintiffs prove that Defendant violated Labor Code § 226.7 or Wage Order 1-2001 in failing to provide required meal breaks, Plaintiffs will have also proven Defendant violated the UCL.

If Defendant has violated the UCL, Plaintiffs and class members' right to restitution automatically flows therefrom. Restitutionary disgorgement is available under the UCL and proper on a classwide basis to redress such conduct. *Kraus v. Trinity Mgmt. Servs.*, 23 Cal. 4th 116, 127 (2000). Such remedy is appropriate given that the purpose of the UCL is to foreclose a defendant from retaining any ill-gotten gains resulting from

their illegal business practices. *Bank of the W.*, 2 Cal. 4th at 1267.

Whether Defendant's conduct was unlawful, fraudulent, or unfair will not be decided based on facts peculiar to each class member but rather, on a single set of facts applicable to all. *Fletcher v. Sec. Pac. Nat'l Bank*, 23 Cal. 3d 442, 453 (1979).  The UCL claims, therefore, raise predominant common issues.

## 2.    A Class Action is Superior to Individual Adjudication

### a.    The Relevant Factors Favor Class Treatment

Finally, Rule 23(b)(3) provides that certification is appropriate if class treatment "is superior to other available methods for the fair and efficient adjudication of the controversy."  This determination "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon*, 150 F.3d at 1023 (holding class resolution was superior when the alternative methods of resolution are individual claims for a small amount of damages). The relevant factors favor class treatment in this case.

As this action rests primarily upon Defendant's uniform practice of failing to provide duty-free meal breaks under California law, class members will have little or no interest in individually controlling the prosecution of this action. *See* Fed. R. Civ. Proc. 23(b)(3)(A).  Further, this action is the only one presently proceeding to enforce the rights and remedies available against Defendant. *See* Fed. R. Civ. Proc. 23(b)(3)(B).  Also, given that all the refineries where class members are employed are located within California, concentration of the litigation in this forum is desirable.  More, Plaintiffs' claims will completely or largely resolve other class members' claims, rendering duplicative actions wasteful and inefficient. *See* Fed. R. Civ. Proc. 23(b)(3)(C).

Any assertion that the CBA provides a superior method of adjudication is misplaced.  First, the 2009 CBA does not provide that *all* disputes between Defendant, the Union, and employees must be arbitrated.  Indeed, the 2009 CBA specifically excludes from the jurisdiction of the arbitrator statutory claims such as the present claim for meal and rest break violations under California Labor Code § 226.7, stating:

The scope of the Arbitrator's authority shall be solely limited to the interpretation

and application of the terms of this Agreement.  The arbitrator shall have no jurisdiction over questions or issues involving Company compliance with any local, state, Federal law or regulation, or questions involving interpretation of the same, regardless if such law are referenced by the Agreement.

Ex. 3, p. 22; Renick Dec., ¶ 4.

Indeed, employees working under a CBA are not restricted to arbitration or a grievance process when asserting rights created under state or federal law.  *See Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 79 (1998) (rejecting defendant's assertion that the CBA created a presumption of arbitrability over federal law claims and finding no waiver of employees' right to seek this judicial forum).

Defendant will likely argue that the 2009 CBA constitutes a waiver of an Operator's right to take an uninterrupted meal break.  On the contrary, it is well settled that an employee may not waive the minimum standards contained in the Labor Code and any agreement to do so is unenforceable as contrary to the public policy of the State of California.  *Gentry v. Superior Court,* 42 Cal.4th 443 (2007) ; *Franco v. Athens Disposal Co.*, 171 Cal. App. 4th 1277 (2009) (parties may not contract to waive employee's right to pursue meal and rest break claim under Cal. Labor Code § 226.7). Assuming, *arguendo*, it was a valid waiver, it is only effective as of February 1, 2009, Ex. 3, p. 49, and it would not affect class claims prior to that date.  In addition, because the 2009 CBA on-duty meal break provision is limited to Operators, Ex. 3, p. 49, it could not provide a defense to claims brought on behalf of class members other than Operators.

### b.    Trial of the Class Claims Would be Manageable

This case can be efficiently tried on a classwide basis.  The focus of this trial will be exclusively on Defendant and its conduct.  As set forth above, this action does not present varied individual factual issues.  Indeed, the facts in this case are largely undisputed.  Rather, common issues predominate and the claims of all class members are subject to common proof.  Indeed, requiring each of the hundreds of class members to pursue individual actions simply to prove the same facts would result in duplicative litigation that would create significant inefficiencies and manageability issues.  Because proof in this litigation in terms of Defendant's liability will come from Defendant and

**INDIVIDUAL PLAINTIFFS' OPENING SUPPL BRIEF RE: CLASS CERTIFICATION**

1   little, if any, information will be required from individual class members, resolution of

2   this action on a classwide basis is manageable.  *See* Fed. R. Civ. Proc. 23(b)(3)(D).

3   **D.    Certification is Also Warranted Under Rule (b)(2)**

4          Rule 23(b)(2) provides for certification where a defendant "has acted or refused to

5   act on grounds that apply generally to the class, so that final injunctive relief or

6   corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R.

7   Civ. P. 23(b)(2).  A class should be certified for equitable relief claims "if the class

8   members complain of a pattern or practice that is generally applicable to the class as a

9   whole."  *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998).  That is precisely what is

10  alleged and supported by the evidence here.

11         In *Dukes v. Wal-Mart Stores, Inc.*, 2010 U.S. App. LEXIS 8576 (9th Cir. Apr. 26,

12  2010), the Ninth Circuit categorically rejected the argument that a claim for monetary

13  relief prevents 23(b)(2) certification and reiterated that Rule 23(b)(2) certification is

14  appropriate unless the monetary relief "predominates" over declaratory and injunctive

15  relief.  *Id.* at *123.  Rejecting both the "subjective intent of the plaintiffs" and the

16  "incidental damages" tests previously used by courts to assess whether monetary damages

17  "predominate," the Ninth Circuit held that predominance is determined by whether the

18  monetary damages is "superior in strength, influence, or authority to injunctive and

19  declaratory relief,"  *Id.* at *123, 124, 126-127 (internal quotations omitted).  The Ninth

20  Circuit stated that to make this determination, "a district court should consider, on a

21  case-by-case basis, the objective 'effect of the relief sought' on the litigation."  *Id.* at

22  *127.  The Ninth Circuit further stated that in conducting the analysis:

> [f]actors such as whether the monetary relief sought determines the key procedures
23 > that will be used, whether it introduces new and significant legal and factual issues,
> whether it requires individualized hearings, and whether its size and nature--as
24 > measured by recovery per class member--raise particular due process and
> manageability concerns would all be relevant, though no single factor would be
25 > determinative.

26  *Id.*

27         Plaintiffs' request for monetary damages will not determine or require that any

28

**INDIVIDUAL PLAINTIFFS' OPENING SUPPL BRIEF RE: CLASS CERTIFICATION**

additional procedures be utilized, introduce any new legal or factual issues, require individualized hearings or raise due process or manageability concerns - beyond those necessary to adjudicate the injunctive relief claims.  Since Plaintiffs' request for monetary damages will not have a measurable impact on the relief sought in the litigation, Rule 23(b)(2) certification is proper.

Here, the injunction is not only an essential part of the relief the Class seeks but in the context of Plaintiffs' ongoing employment under a scheme which is alleged in this lawsuit to be unlawful, injunctive relief, it will have a broader impact that will affect more persons and have consequences over a greater period of time than the back pay that may be awarded.  *See* 8 *Newberg on Class Actions* § 24.118.  Injunctive relief is the only form of relief sought by Plaintiffs' Unfair Competition Claim.  Moreover, not only is the back pay in this case "rooted in grounds applicable to all members of the defined class" but the back pay damages sought by Plaintiffs are equitable in nature as they are seeking restitution for lost wages and civil penalties under applicable labor code provisions.

## V.  CONCLUSION

Plaintiffs request that this Court certify this case to proceed on behalf of the Class, and appoint Named Plaintiffs as the Class representatives and their counsel as Class Counsel.


Dated: May 17, 2010                    HADSELL STORMER KEENY
                                       RICHARDSON & RENICK, LLP

                                       By:  ____/s/ –  Randy Renick_____

**INDIVIDUAL PLAINTIFFS' OPENING SUPPL BRIEF RE: CLASS CERTIFICATION**