CATHERINE A. CONWAY (SBN 98366)
JULIA I. DE BEERS (SBN 233811)
JEREMY F. BOLLINGER (SBN 240132)
cconway@akingump.com
jdebeers@akingump.com
jbollinger@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD LLP**
2029 Century Park East, Suite 2400
Los Angeles, California 90067-3012
Telephone: 310-229-1000
Facsimile: 310-229-1001

Attorneys for Defendant
ConocoPhillips Company

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION - ROYBAL FEDERAL BLDG

UNITED STEEL, PAPER & FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL & SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC, on behalf its members employed by defendants, and RAUDEL COVARRUBIAS, DAVID SIMMONS AND STEPHEN S. SWADER, SR., individually and on behalf of all similarly situated current and former employees,

Plaintiffs,

v.

CONOCOPHILLIPS COMPANY and DOES 1 through 10, inclusive,

Defendants.

Case No. CV08-2068 PSG (FFMx)

**DEFENDANT CONOCOPHILLIPS COMPANY'S REQUEST FOR JUDICIAL NOTICE OF *HUGHES V. WINCO FOODS***

Judge: Hon. Philip S. Gutierrez

Date: March 5, 2011
Time: 1:30 p.m.
Ctrm: 880

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that pursuant to Federal Rules of Evidence, rule 201, Defendant ConocoPhillips Company requests that the Court take judicial notice of the Order Denying Plaintiffs' Motion for Class Certification in *Claudia Hughes, et al. v. WinCo Foods, et al*., U.S. District Court for the Central District of California, Case No. ED CV11-00644 JAK (OPx) dated January 4, 2012. A copy of the order is attached hereto as **Exhibit A**.

Rule 201 of the Federal Rules of Evidence permits a district court to take judicial notice of matters of public record, including the proceedings of any federal or state court. *See Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002) (Rule 201 allows district courts to take judicial notice of orders, decisions, or proceedings of any federal or state court); *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995) (courts may take judicial notice of matters of public record); *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc*., 971 F.2d 244, 248 (9th Cir. 1992) (courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue").

The Court should take judicial notice of the decision in *Hughes* because it is relevant to the issues presented in ConocoPhillips' Motion for Reconsideration of the Court's Order Granting Plaintiffs' Renewed Motion for Class Certification, Dkt. #333, pending before this Court. In response to the Court's Order requesting briefing on the relevance of the U.S. Supreme Court's decision in *Wal-Mart v. Dukes*, 131 S.Ct. 2541 (2011) to this Court's decision on class certification, ConocoPhillips argued that here commonality could not be demonstrated under *Dukes* because of the discretionary nature of ConocoPhillips' meal period policy. Dkt. #319 at 4-7. Specifically, ConocoPhillips stated that "[t]he policy alleged here involves a similar kind of discretion exercised by supervisors and head operators over the meal and rest break practices of shift workers" and that "Plaintiffs must 'identif[y] a common mode of exercising discretion that pervades the entire company.'" Dkt. #319 at 5 (citing *Dukes*,

131 S.Ct. at 2554-55).

The Court rejected ConocoPhillips' argument because "Defendant's alleged policy of requiring Plaintiffs to remain on duty during meal periods is … not similar to the policy in *Dukes*, according to which local store managers exercised discretion over promotion of subordinates." Dkt. #326 at 8. However, if the Court reconsiders its ruling in light of *Ellis v. Costco Wholesale Corp*., 657 F.3d 970 (9th Cir. 2011), it should also consider the reasoning of *Hughes*.

The *Hughes* court found commonality lacking and class certification unsuitable because "the decision-making with respect to when employees may take meal and rest breaks is diverse." *Hughes* Order at 7. The meal breaks of the *Hughes* class members was determined by other hourly employees who served as supervisors, much in the same way head operators exercise discretion over the breaks of other operators in their units at ConocoPhillips. *Hughes* Order at 9 ("non-exempt hourly employees who served as supervisors … bore significant responsibility for their meal breaks not occurring within the first five hours of their shifts'). Accordingly, *Hughes* concluded that that "the only common policy is the one that gives WinCo managers discretion over the timing and arrangement of the meal periods taken by employees." *Id*. at 8.

Likewise, ConocoPhillips presented evidence that no formalized procedure exists at its refineries for providing operators with meal periods, that supervisors have different approaches to enforcing meal periods, and that because of the flexibility of the work shifts under the parties' 12-Hour Shift Agreement, the taking of meal periods is left to the discretion of the operators themselves and the head operators or supervisors to whom they report. Dkt. #319 at 5-7. Indeed, those head operators and supervisors exercise the same discretion to determine whether to interrupt an operator's break period. *Id*. at 6-7.

Thus, the Court should take judicial notice of *Hughes* because post-*Ellis* these facts make *Hughes* relevant to the Court's class certification inquiry.

In addition, the *Hughes* court recognized that "'considering whether questions of law or fact common to class members predominate begins, of course, with the elements of the underlying cause of action.'" Order at 11 (quoting *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011). ConocoPhillips argued in its Opposition to Plaintiffs' Renewed Motion for Class Certification and in its Motion for Reconsideration that the Court cannot determine whether common questions exist or predominate without determining the relevant elements of the Plaintiffs' claims. Dkt. #228 at 3-6, 333 at 8-10. For this reason, too, the Court should grant ConocoPhillips request for judicial notice and consider *Hughes* when deciding ConocoPhillips' motion for reconsideration.

Dated: January 17, 2012

AKIN GUMP STRAUSS HAUER & FELD LLP
Catherine A. Conway
Julia I. De Beers
Jeremy F. Bollinger

By *___/s/Catherine A. Conway___*
Catherine A. Conway
Attorneys for Defendant ConocoPhillips Company

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | ED CV11-00644 JAK (OPx) | Date | January 4, 2012 |
| Title | Claudia Hughes, et al. v. WinCo Foods, et al. | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |

| | |
|---|---|
| Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION (Dkt. 28)**

## I. INTRODUCTION

Plaintiffs Claudia Hughes and Lisa McCallum ("Plaintiffs") are former employees of Defendant WinCo Foods, LLC ("WinCo" or "Defendant"), a grocery store chain with 30 stores in California. Plaintiffs bring this putative class action on behalf of themselves and other former and current WinCo employees. Plaintiffs' claims are based on the contention that Defendant failed to comply with California law with respect to providing required meal and rest breaks. As a result of these alleged violations, Plaintiffs contend that they, and the putative class members whom they seek to represent, are owed certain unpaid wages.

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs have moved to certify a class defined as: "All non-exempt employees who were compensated by being paid at an hourly rate by Defendant WinCo in California, whose job responsibilities included preparing, stocking, ordering, distributing and selling products at retail prices in California during the period from March 22, 2007, through the present ('the Relevant Period')." Plaintiff's Mot. for Class Cert. ("Mot."), p. 2:4-9, Dkt. 28. Through their motion, Plaintiffs seek to certify the class with respect to the claims advanced through the following causes of action in the First Amended Complaint ("FAC"): (i) the first cause of action for failure to provide timely off-duty meal periods required by California Labor Code §§ 226.7, 512(a); (ii) the third cause of action for failure to pay all wages upon the cessation of employment in violation of California

**Exhibit A - Page 4**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | ED CV11-00644 JAK (OPx) | Date | January 4, 2012 |
|---|---|---|---|
| Title | Claudia Hughes, et al. v. WinCo Foods, et al. | | |

Labor Code § 203; and (iii) the fourth cause of action for unfair business practices in violation of California Business and Professions Code §§ 17200 *et seq*.[1]

The Court conducted a hearing on this matter on December 12, 2011, at which each side presented oral argument. At the conclusion of the hearing, the Court took the matter under submission. For the reasons stated in this Order, the Court DENIES the motion for class certification. The standards of Rule 23 have not been met by Plaintiffs.

## II. BACKGROUND

Plaintiff Claudia Hughes was employed by Defendant from October 6, 2004 through October 8, 2009 as a non-exempt, hourly employee. Hughes Decl. ¶ 2, Dkt. 30. Plaintiff Lisa McCallum was employed by Defendant from October 7, 2004 through October 10, 2009 as a non-exempt, hourly employee. McCallum Decl. ¶ 2, Dkt. 31. During the Relevant Period, Plaintiffs both worked as "Deli Clerks" exclusively in the delicatessen department in a WinCo store in Temecula. Each was terminated in October 2009 for "gross misconduct." Stinger Decl. ¶ 16, Dkt. 38-2; Kwan Decl., Exh. B (Hughes Depo. 20:13-20, 127:15-23, 162:13-18), Dkt. 38-5, 38-6; Kwan Decl., Exh. C (McCallum Depo. 17:7-11, 18:3-25, 106:13-18), Dkt. 38-7.

Each WinCo store has up to 15 different departments, most of which are managed by hourly employees known as department managers. Stinger Decl. ¶¶ 5, 9. Hourly employees have many different job titles, functions, duties and responsibilities. *Id.* ¶ 6. Indeed, there are more than 40 different job titles and descriptions for hourly employees. *Id.* Further, each department at each WinCo store is staffed differently depending on the needs and sales volume of that particular store and department. *Id.* ¶ 8.

From March 22, 2007 to the present time, Defendant has employed thousands of non-exempt employees in its 30 California stores. Plaintiffs allege that, during that time period, Defendant has failed to comply with its legal duties to ensure that its non-exempt employees take required meal breaks. Plaintiffs assert that Defendant implemented policies regarding meal breaks that committed Defendant

[1] Because Plaintiffs' third and fourth causes of action are derivative of their first cause of action, and because Plaintiffs do not seek class certification of their second cause of action, this Order addresses only whether Plaintiffs' first cause of action for missed meal periods is amenable to class treatment. *See* Civil Minutes – General, Dkt. 44, Dec. 12, 2011 ("Counsel clarify on the record that each of Plaintiffs' remaining causes of action is derivative of Plaintiffs' first cause of action for failure to provide meal periods, with the exception that Plaintiffs do not seek certification of their second cause of action for failure to provide rest breaks."). Under these circumstances, the Court's determination is binding as to a potential certification of the two derivative claims.

**Exhibit A - Page 5**

CV-90 (10/08) CIVIL MINUTES - GENERAL Page 2 of 12

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | ED CV11-00644 JAK (OPx) | Date | January 4, 2012 |
|---|---|---|---|
| Title | Claudia Hughes, et al. v. WinCo Foods, et al. | | |

to providing a meal break within five hours of the commencement of the shift of any employee working more than six hours.

Plaintiffs also state that accurate records of their time as well as the time of the putative class members are maintained through Defendant's electronic timekeeping system. This centralized timekeeping system allows all employees to record their time by logging into a computer workstation in the store at which they are working. These workstations are all connected to an AS-400 computer at company headquarters. *See* Stoneman Decl., Exh. A, p. 21-22, Dkt. 32-1. Further, Plaintiffs contend that Defendant maintains a policy requiring employees to record their time within two minutes of arriving or leaving their workstation, which helps ensure that accurate records are kept. *See id.* at 56-58.[2] Although Plaintiffs do not yet have time records for the entire class, Defendant has provided Plaintiffs' own time records, which show that Plaintiffs took their meal breaks after the first five hours of their shifts between 62% and 64% of the time. Haddon Decl. ¶ 2.[3]

## III. ANALYSIS

### A. Class Action Standards

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes et al.*, 131 S. Ct. 2541, 2550 (2011). Under Rule 23 of the Federal Rules of Civil Procedure, a class "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982). That "rigorous analysis" will "frequently" include "some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 131 S. Ct. at 2551.

---

[2] WinCo's policy entitled "VI. Time Card Recording and Attendance" includes the following requirement: "Each employee must clock their own time 'in' when reporting to work and 'out' when their shift is complete in accordance with the posted weekly work schedule. Employees must not clock 'in' more than two (2) minutes prior to their start time nor 'out' more than two (2) minutes after completing their shift." Hughes Decl., Exh. B. The same policy further provides, "Claiming time worked when not actually performing company work (i.e., not punching out for lunch and not punching in when returning) is considered theft of time and the employee shall be subject to termination for gross misconduct." *Id.*

[3] Plaintiffs contend that the relevant California labor laws require that meal periods occur within the first five hours of the start of an employee's shift; Defendant disagrees. According to Defendant, the law is unsettled as to whether a break must be taken as opposed to made available, and whether such break must occur within the first five hours of an employee's shift. *See* Cal. Labor Code § 512(a) ("An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee."). Independent of this dispute, which the California Supreme Court is expected to address in *Brinker Restaurant Corp., et al. v. Superior Court of San Diego*, S166350, it was Defendant's policy to provide meal periods within the first five hours of an employee's shift. Stinger Decl. ¶ 12, Dkt. 38-2.

**Exhibit A - Page 6**

CV-90 (10/08) CIVIL MINUTES - GENERAL Page 3 of 12

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | ED CV11-00644 JAK (OPx) | Date | January 4, 2012 |
|---|---|---|---|
| Title | Claudia Hughes, et al. v. WinCo Foods, et al. | | |

In seeking class certification, a putative class representative plaintiff must establish that the proposed class meets each of the prerequisites of Rule 23(a). *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). These are: (i) numerosity, (ii) commonality, (iii) typicality, and (iv) adequacy of representation. FED. R. CIV. P. 23(a). Further, "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart*, 131 S. Ct. at 2551 (italics in original). Once these four prerequisites are satisfied, a court must consider whether the proposed class can be maintained under the standards of Rule 23(b). *See, e.g.*, *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

**B. Rule 23(a) Prerequisites**

1. Numerosity

Rule 23(a)(1) requires that, in order to be certified, a class must be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). "Impracticability does not mean impossibility, but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). No specific number of members is needed to warrant a class action. *Cypress v. Newport News Gen. & Nonsectarian Hospital Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967). Here, Plaintiffs contend, and Defendant does not dispute, that the putative class likely will include between 3,071 and 4,701 non-exempt employees. Stoneman Decl., Exh. B, Dkt. 32-2. Accordingly, the numerosity requirement is satisfied.

2. Commonality

a. Legal Standard

Rule 23(a)(2) requires that the case involve "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). The commonality requirement is satisfied only by a common question "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 131 S. Ct. at 2551. "Requiring there to be common questions of law or fact prior to certifying a class serves chiefly two purposes: (1) ensuring that absentee members are fairly and adequately represented; and (2) ensuring practical and efficient case management." *Walters v. Reno*, 145 F.3d 1032, 1045 (9th Cir. 1998).

**Exhibit A - Page 7**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | ED CV11-00644 JAK (OPx) | Date | January 4, 2012 |
|---|---|---|---|
| Title | Claudia Hughes, et al. v. WinCo Foods, et al. | | |

b. Plaintiffs' Arguments

Plaintiffs assert that the "commonality" requirement is satisfied due to Defendant's policy of requiring that employees obtain management approval before going on a meal break.[4] Plaintiffs contend that this policy is one through which Defendant exercises sufficient and common control over its employees to remove the possibility of any need for individualized inquiries. Plaintiffs distinguish *Brinker Restaurant Corp. v. Superior Court*, 165 Cal. App. 4th 25, *rev. granted*, 85 Cal. Rptr. 3d 688 (Oct. 22, 2008), on this ground. The issue presented in *Brinker* is whether, pursuant to the Labor Code section at issue here, employers are obligated to make breaks available or whether employers must ensure that employees timely take the required breaks. Thus, Plaintiffs argue that this case is distinct from the issue in *Brinker* because Defendant has adopted a policy that requires employees to seek breaks through their managers.

c. Defendant's Arguments

Defendant has presented evidence that WinCo stores have numerous departments, many of which are individually managed, and that hourly employees have numerous and unique job titles and functions. This evidence shows that these divisions, in turn, affects when breaks are available. Defendant also has submitted evidence in support of its contention that there is highly individualized decision-making within each department and each store with respect to when employees take meal and rest periods. In some stores the decision-making authority as to particular departments may be placed with a person holding a specific managerial position, while the decisions as to other departments are made by those who oversee those particular departments. In some instances the decision is made by a person working in, rather than overseeing, the particular department. Defendant contends that individual managers and supervisors have the discretion and authority to determine the best method for arranging employee meal periods, depending on the needs and circumstances of their respective departments. Stinger Decl. ¶¶ 13, 24; Kwan Decl., Exh. A (Stinger Depo. 61:8-14); *id.*, Exh. D (Olmedo Decl. ¶¶ 7, 9; Fernandez Decl. ¶¶ 5, 7, 9; Green Decl. ¶¶ 4, 7, 9); *id.*, Exh. C (McCallum Depo. 90:6-94:7 (employees in the Bulk and Pizza Department would just talk with each other to arrange their meal periods); 105:21-106:5 (the manager in bakery would schedule meal periods)).

Defendant has presented evidence that the timing of employee meal periods varies widely based on numerous factors, including: (1) the store where the employee works, Kwan Decl., Exh. D (Fernandez Decl. ¶ 12, Regan Decl. ¶ 6); (2) the department where the employee works, *id.*, Exh. C (McCallum Depo. 85:19-87:22, 90:5-90:25); *id.*, Exh. D (Batey Decl. ¶ 4; Whitaker Decl. ¶ 5); (3) the functions within a department to which the employee is assigned, *id.*, Exh. B (Hughes Depo. 127:24-

[4] The following is an excerpt from WinCo's policy entitled "VII. Breaks and Lunch Periods": "Employees should complete their current customer transaction before taking their break. Employees are not allowed to leave their work post without the permission of the management or a person in charge." Hughes Decl., Exh. B, Dkt. 30.

**Exhibit A - Page 8**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | ED CV11-00644 JAK (OPx) | Date | January 4, 2012 |
|---|---|---|---|
| Title | Claudia Hughes, et al. v. WinCo Foods, et al. | | |

131:1, 135:7-138:9, Exh. 14); *id.*, Exh. C (McCallum Depo. 115:1-116:5, 119:8-121:2, Exh. 16); *id.*, Exh. D (Aguayo Decl. ¶ 5); (4) whether the employee is performing customer transactions, *id.*, Exh. D (Batey Decl. ¶ 4; Whitaker Decl. ¶ 6); (5) what shift an employee works, *id.*, Exh. B (Hughes Depo. 116:2-117:5); *id.*, Exh. C (McCallum Depo. 133:10-14); *id.*, Exh. D (Fernandez Decl. ¶ 11; Green Decl. ¶ 8; Regan Decl. ¶ 5; Whitaker Decl. ¶ 5); (6) what time the shift started, *id.*, Exh. C (McCallum Depo. 133:10-16); *id.*, Exh. D (Aguayo Decl. ¶¶ 4-5; Dunn Decl. ¶ 6; Gracia Decl. ¶¶ 5, 9; Green Decl. ¶¶ 7-8; Ippolito Decl. ¶ 4; Regan Decl. ¶ 5; Whitaker Decl. ¶ 4); (7) the day of the week, *id.*, Exh. D (Whitaker Decl. ¶ 5); (8) department manager initiative and direction, *id.*, Exh. B (Hughes Depo. 117:6-121:13); *id.*, Exh. C (McCallum Depo. 88:3-90:4, 115:1-116:5, 127:14-131:15, Exh. 16); *id.*, Exh. D (Green Decl. ¶ 8); (9) staffing levels, including whether any employees were absent, *id.*, Exh. C (McCallum Depo. 104:3-105:2, 133:10-19); *id.*, Exh. D (Aguayo Decl. ¶ 5; Dunn Decl. ¶ 9; Green Decl. ¶ 9; Ippolito Decl. ¶ 5); (10) workload, which may vary from day to day, Hughes Decl. ¶ 4; McCallum Decl. ¶ 4; Kwan Decl., Exh. B (Hughes Depo. 144:13-145:15, Exh. 15); *id.*, Exh. C (McCallum Depo. 133:10-21, 134:1-135:3, Exh. 17); *id.*, Exh. D (Batey Decl. ¶ 6; Dunn Decl. ¶ 9; Green Decl. ¶ 7; Regan Decl. ¶ 5; Whitaker Decl. ¶ 5); (11) employee preference or convenience, *id.*, Exh. D (Aguayo Decl. ¶ 4; Dunn Decl. ¶¶ 7, 9; Gracia Decl. ¶¶ 7, 11; Green Decl. ¶ 7); and (12) customer traffic and needs, *id.*, Exh. C (McCallum Depo. 90:6-25); *id.*, Exh. D (Gracia Decl. ¶ 9; Green Decl. ¶ 8; Ippolito Decl. ¶ 5).

Defendant also argues that Plaintiffs' own testimony undermines their claim of commonality. Thus, Defendant points out that McCallum testified at her deposition that the timing of her meal period depended on whether she was busy, which varied day to day, week to week, and month to month. Kwan Decl., Exh. C (McCallum Depo., 81:21-82:16). Hughes testified that factors affecting the timing of her meal periods varied for similar reasons. *Id.*, Exh. B (Hughes Depo. 144:13-145:15, 151:11-24, Exh. 15).

Defendant further asserts that, at all relevant times, it has been WinCo's policy and practice to provide meal periods within the first five hours of an employee's shift. Indeed, Defendant has provided evidence that both plaintiffs and a number of potential class members understood WinCo's policy and practice as such. Kwan Decl., Exh. B (Hughes Depo. 113:7-12); *id.*, Exh. C (McCallum Depo. 45:25-46:8); *id.*, Exh. D (Aguayo Decl. ¶ 3; Dunn Decl. ¶ 3; Fernandez Decl. ¶ 3; Gracia Decl. ¶ 6; Green Decl. ¶ 3; Ippolito Decl. ¶ 3; Regan Decl. ¶ 3; Whitaker Decl. ¶ 3). Plaintiffs and other putative class members also have acknowledged that one of their responsibilities as employees was to follow WinCo's policies and practices and take their meal period within the first five hours of their shifts. Kwan Decl., Exh. B (Hughes Depo. 77:21-79:7, 148:22-149:11, Exh. 7); *id.*, Exh. C (McCallum Depo. 59:16-61:10, 79:6-80:8, Exh. 6); *id.*, Exh. D (Aguayo Decl. ¶¶ 3, 6; Batey Decl. ¶¶ 3, 6; Dunn Decl. ¶¶ 3, 4; Fernandez Decl. ¶¶ 5, 6, 14; Garcia Decl. ¶ 7; Green Decl. ¶ 6; Ippolito Decl. ¶¶ 3, 6; Regan Decl. ¶ 3; Whitaker Decl. ¶ 3). Further, both Plaintiffs admitted in their depositions that WinCo did not schedule meal periods after the fifth hour of a shift, or have any policy that prevented them from taking meal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | ED CV11-00644 JAK (OPx) | Date | January 4, 2012 |
|---|---|---|---|
| Title | Claudia Hughes, et al. v. WinCo Foods, et al. | | |

periods before the fifth hour. Kwan Decl., Exh. B (Hughes Depo. 104:2-105:23); *id.*, Exh. C (McCallum Depo. 81:3-20).

In response to Plaintiffs' contention that Defendant's policy requires employees to obtain the permission of their supervisors before leaving their work posts, Defendant has presented evidence that the policy applies only to those employees who complete customer transactions, such as the cashiers and other select employees. Stinger Decl. ¶ 22; Kwan Decl., Exh. A (Stinger Depo. 31:20-32:1, 40:8-42:6, 50:1-51:1, 58:25-60:21). Defendant points out that this interpretation is logical because the restriction requiring permission to take a break immediately follows the sentence, "Employees should complete their current customer transaction before taking their break." Stinger Decl. ¶ 21. Employees who do not have to complete customer transactions, therefore, generally are not bound by the provision. Indeed, Defendant has provided evidentiary support for its position that WinCo does not require or expect managers specifically to relieve employees for meal periods. *See, e.g.*, Stinger Decl. ¶ 22; Kwan Decl., Exh. D (Aguayo Decl. ¶ 5; Batey Decl. ¶ 4; Dunn Decl. ¶ 7; Gracia Decl. ¶ 11; Whitaker Decl. ¶ 4). Further, Plaintiffs acknowledged that they were not specifically relieved by a manager each time they took a meal period, and that it was their decision whether to ask to take their meal periods before clocking out for lunch. Kwan Decl., Exh. B (Hughes Depo. 70:20-71:10, 109:7-13, 111:16-20, 120:13-122:11); *id.*, Exh. C (McCallum Depo. 54:4-10, 84:7-85:2, 94:21-95:16).

Defendant also submitted a declaration from Robert W. Crandall, who was proffered as an expert in economic and statistical analysis. In it, Crandall analyzed the time records for the Temecula store where Plaintiffs were employed. Crandall's analysis of these data shows wide variations in the frequency of missed meal periods both across and within departments. Crandall Decl. ¶ 11, Dkt. 38-4. Crandall also states, however, after disavowing the usefulness of averages for such variable data, that meal breaks were taken within the first five hours on 79% of all shifts over six hours. *Id.* Plaintiffs contend that the Crandall Declaration is, therefore, evidence that, in 21% of such shifts, employees did not take their meal periods within the first five hours worked.

d. Plaintiffs Have Not Shown Commonality

As explained above, the commonality requirement is satisfied only by a common question "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 131 S. Ct. at 2551.The evidence that has been presented shows that this standard cannot be met in this case. The Court so finds for two primary reasons.

*First,* the decision-making with respect to when employees may take meal and rest breaks is diverse. It varies from store to store, and from department-to-department within the same store. There

**Exhibit A - Page 10**

CV-90 (10/08) CIVIL MINUTES - GENERAL Page 7 of 12

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | ED CV11-00644 JAK (OPx) | Date | January 4, 2012 |
|---|---|---|---|
| Title | Claudia Hughes, et al. v. WinCo Foods, et al. | | |

is simply no manner in which the timing of such breaks can be proven reliably with evidence of "a single stroke."

*Second,* the Court is mindful of the evidence presented as to whether there are common policies in place as well as the evidence concerning an electronic system of monitoring breaks. As to the former, the evidence showing autonomy of such decision-making from store to store and department to department, is more impressive and persuasive than the contrary, competing evidence. As to the latter, the Crandall Declaration does not lend itself to the inference, as Plaintiffs suggest, that WinCo employees took late meal periods as a result of a controlling corporate policy that precluded them from taking timely meal periods. Indeed, the declaration supports the contrary position. Thus, in analyzing the frequency of late or missed meal periods in each department, Crandall found that the standard deviation for each department is between 12% and 50%, with coefficients of variation ranging from 6.67 to 47.51. *Id.* ¶ 16, Table 1. These figures support the assertion that there was wide variation among employees, even within each department, regarding when meal periods were taken. *See id.* Further, Crandall found that 20% of Temecula WinCo employees never took a late meal period. *Id.* ¶ 12. Thus, the fact that meal periods were taken "late" on 21% of shifts does not indicate that WinCo had a policy against timely meal periods. Instead, the underlying variability Crandall uncovered reinforces Defendant's contention that many individual factors affected when particular employees took their meal periods. Also, that 20% of the employees considered never took a late meal period indicates that the class, as currently defined, is overbroad; it includes persons who never took a late meal period and, therefore, suffered no corresponding injury.

Further, notwithstanding Plaintiffs' contention that Defendant's uniform policies ensure commonality, the only common policy is the one that gives WinCo managers discretion over the timing and arrangement of the meal periods taken by employees. There may be some common questions, such as whether Defendant required employees to miss meal breaks, and whether Defendant compensated employees for missed breaks. However, these common questions are not sufficiently cohesive or central to overcome the other limitations on establishing commonality.

3. <u>Typicality</u>

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Hanon*, 976 F.2d at 508. "[T]he typicality requirement is permissive and requires only that the representative's claims are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | ED CV11-00644 JAK (OPx) | Date | January 4, 2012 |
|---|---|---|---|
| Title | Claudia Hughes, et al. v. WinCo Foods, et al. | | |

Plaintiffs assert that their claims are typical because their claims, like those of the putative class members, arise from the same course of conduct: Defendant's implementation of a Personnel Policy requiring that employees obtain permission from management or team leaders before leaving their posts, and Defendant's failure to provide that permission in a manner that ensured that meal periods were taken in a timely manner. Defendant responds that, when compared with Plaintiffs, 95% of Temecula WinCo employees have a lower percentage of incidences in which they took their meal periods after the first five hours of their shifts. Crandall Decl. ¶ 12. Accordingly, Defendant argues, Plaintiffs' claims have not been shown to be typical.

Here, Plaintiffs satisfy the typicality prerequisite. Typicality refers only to the nature of the claim, as mentioned above, not to the quantity of violations or the specific facts surrounding each violation. Plaintiffs' claims are premised on alleged labor law violations regarding meal periods, as are those of the putative class. Accordingly, Plaintiffs' claims meet the typicality requirement.

4. Adequacy of Representation

The requirement of adequacy contained in Rule 23(a)(4) ensures that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). The adequacy requirement is needed to protect the due process rights of all of the class members, because in a class proceeding, all class members will be bound by the final judgment. *See Richards v. Jefferson County*, 517 U.S. 793 (1996). The determination of adequacy hinges on whether the named plaintiffs and their counsel have any conflicts of interest with other class members and whether they will prosecute the action vigorously. *Hanlon*, 150 F.3d at 1020. "[T]he adequacy-of-representation requirement is satisfied as long as one of the class representatives is an adequate class representative." *Local Joint Executive Board of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001).

Plaintiffs assert that they are adequate representatives because there are no conflicts of interest between class members and Plaintiffs, and no conflicts between class members and Plaintiffs' counsel. Further, Plaintiffs contend that class counsel is adequate because of their extensive class action experience in the wage and hour field. Haddon Decl. ¶ 3. Defendant responds that Plaintiffs are not adequate representatives because they have conflicts with members of the class. Specifically, Defendant asserts that certain members of the proposed class -- the non-exempt hourly employees who served as supervisors -- have a conflict with Plaintiffs and other subordinates who are also class members. According to Defendant, the proposed class includes Department Managers, Managers in Training, and Lead Clerks. Plaintiffs both testified during their depositions that their Department Managers bore significant responsibility for their meal breaks not occurring within the first five hours of their shifts. Kwan Decl., Exh B (Hughes Depo. 144:8-147:3, Exh. 15); *id.*, Exh. C (McCallum Depo.

**Exhibit A - Page 12**

CV-90 (10/08) CIVIL MINUTES - GENERAL Page 9 of 12

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | ED CV11-00644 JAK (OPx) | Date | January 4, 2012 |
|---|---|---|---|
| Title | Claudia Hughes, et al. v. WinCo Foods, et al. | | |

134:2-9, 135:13-137:13, Exh. 17). Thus, due to these conflicts, Defendant contends that Plaintiffs cannot adequately represent the interests of all non-exempt hourly employees.

The inclusion of supervisors in the proposed class creates a potential conflict of interest and may result in inadequate representation. *See Hadjavi v. CVS Pharm., Inc.*, No. CV10-04886, 2011 U.S. Dist. LEXIS 86341, *15-16 (C.D. Cal. July 25, 2011) (finding that a supervisor was an inadequate representative for other non-supervisor employees in a putative class action regarding meal and rest breaks); *see also Wagner v. Taylor*, 836 F.2d 578, 595 (D.C. Cir. 1987) ("Supervisory employees are often inappropriate representatives of nonsupervisory employees because the structure of the workplace tends to cultivate distinctly different interests between the two groups."). Although the concerns regarding representation may be different in the situation presented here, where non-supervisors are representing the interests of supervisors, rather than vice-versa, there is still a potential for conflict in light of the differing interests and responsibilities of the two groups of class members. Thus, because Plaintiffs assign partial responsibility for labor law violations to their supervisors, and simultaneously seek to represent said supervisors, there is a conflict of interest. It raises sufficient concerns about adequacy of representation to make the class, as currently defined, inappropriate.[5]

**C. Rule 23(b)(3) Requirements**

If the Rule 23(a) prerequisites are satisfied a court next considers whether the proposed class can be maintained under at least one of the subparts of Rule 23(b). *See, e.g.*, *Valentino*, 97 F.3d at 1234. As explained above, the Court has concluded that all of the requirements of Rule 23(a) have not been met. Nonetheless, the Court considers the Rule 23(b) issues as part of its effort to present a comprehensive assessment of the current motion. Here, Plaintiffs seek certification under Rule 23(b)(3), which has two requirements: (1) that "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

1. Predominance of Common Questions

The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,

[5] Although this issue could be addressed by an exclusion of such persons from the class, Plaintiffs have not proposed that alternative. Consequently, the parties have not submitted their respective positions on the viability of this approach. As a result, the Court is not in a position to determine if this would be an appropriate resolution of this issue. However, because Plaintiffs' proposed class fails to meet other criteria of Rule 23, the Court need not determine this issue.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | ED CV11-00644 JAK (OPx) | Date | January 4, 2012 |
|---|---|---|---|
| Title | Claudia Hughes, et al. v. WinCo Foods, et al. | | |

623 (1997). Determining whether common questions predominate requires the court to weigh the common questions in the case against the individualized questions, a more in-depth inquiry than the Rule 23(a)(2) question of whether common questions are at issue in the case. "It is clear that considering whether questions of law or fact common to class members predominate begins, of course, with the elements of the underlying cause of action." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011).

Defendant argues that Plaintiffs allege only that on *some* days they were unable to take meal breaks during the first five hours of a shift, and that there are many individualized reasons for why this occurred. Defendant contends that Plaintiffs have not demonstrated that any common policy, practice, procedure or circumstance forced them to take meal periods after working for five hours.

The Court agrees; common questions do not predominate. As explained above, putative class member declarations confirm that a wide range of factors affect when meal breaks are taken. These factors and their resulting application vary significantly from store to store, department to department, manager to manager, shift to shift, and day to day. Also as explained above, Plaintiffs' reliance on the Personnel Policy that instructs employees to seek permission from their supervisors before leaving their posts is insufficient to demonstrate that common questions predominate. Plaintiffs have not presented any evidence showing how this policy applied to them or how it affected their ability to take their breaks, much less how it affected other putative class members. And, Defendants have presented evidence that supports a finding that this policy applied only to employees completing customer transactions on a cash register; like a vast majority of the putative class members, Plaintiffs did not perform this function.

Accordingly, for these reasons and those discussed above with respect to the analysis of the Rule 23(a)(2) standard, Plaintiffs have failed to carry their burden "affirmatively [to] demonstrate" that the alleged meal period violations were the result of a common policy or practice, or otherwise demonstrate the predominance of common questions.

2. Superiority of Class Action

In evaluating whether a class action is the superior mechanism for handling a case, a court must consider: (1) the interest of class members in individually controlling prosecution of separate actions; (2) the extent and nature of any pending litigation concerning the controversy; (3) the desirability of litigating the claims in the particular forum where the class action is filed; and (4) difficulties likely to be encountered in managing the class action. FED. R. CIV. P. 23(b)(3). A class action is superior "[w]here classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino*, 97 F.3d at 1234.

**Exhibit A - Page 14**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | ED CV11-00644 JAK (OPx) | Date | January 4, 2012 |
|---|---|---|---|
| Title | Claudia Hughes, et al. v. WinCo Foods, et al. | | |

Here, because of the substantial individual inquiries that would be necessary to adjudicate the issues raised in this matter, a class action is not the superior method for the adjudication of the claims presented. A class proceeding would not promote greater efficiency because the class action would devolve into hundreds or thousands of "mini-trials;" thus, the difficulties associated with pursuing these claims via a class action outweigh any benefits.

## IV. CONCLUSION

For the reasons discussed in this Order, Plaintiffs have failed to demonstrate compliance with Rule 23; consequently, their motion for class certification is DENIED.

The Court sets a trial setting conference for January 23, 2012 at 1:30 p.m.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer ak

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 2029 Century Park East, Suite 2400, Los Angeles, California 90067. On January 17, 2012, I served the foregoing document(s) described as: **DEFENDANT CONOCOPHILLIPS COMPANY'S REQUEST FOR JUDICIAL NOTICE OF *HUGHES V. WINCO FOODS*** on the interested party(ies) below, using the following means:

**All parties identified for Notice of Electronic Filing generated by the Court's CM/ECF system under the referenced case caption and number**

☒ BY ELECTRONIC MAIL OR ELECTRONIC TRANSMISSION. Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent to the respective e-mail address(es) of the party(ies) as stated above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on January 17, 2012 at Los Angeles, California.

Yvonne Shawver
Print Name

Signature