Anne Richardson (California Bar No. 151541)
(Email: Aricardson@Hskrr.Com)
Randy Renick (California Bar No. 179652)
(Email: Rrr@Hskrr.Com)
Cornelia Dai (California Bar No. 207435)
(Email: Cdai@Hskrr.Com)
**HADSELL STORMER KEENY**
**RICHARDSON & RENICK, LLP**
128 North Fair Oaks Avenue, Suite 204
Pasadena, California 91103-3645
Telephone:   (626) 585-9600
Fax:               (626) 577-7079

*Attorneys for Plaintiffs Raudel Covarrubias,*
*David Simmons, And Stephen S. Swader*

Jay Smith (California Bar No. 166105)
(Email: Js@Gslaw.Org)
Joshua F. Young (California Bar No. 232995)
(Email: Jyoung@Gslaw.Org)
**GILBERT & SACKMAN**
**A LAW CORPORATION**
3699 Wilshire Boulevard, Suite 1200
Los Angeles, California 90010
Telephone:   (323) 938-3000
Fax:               (323) 937-9139

*Attorneys for Plaintiff USW*
[Additional Counsel Listed On Next Page]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STEEL, PAPER & FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL & SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC, on behalf of its members employed by defendants, and RAUDEL COVARRUBIAS, DAVID SIMMONS AND STEPHEN S. SWADER, SR., individually and on behalf of all similarly situated current and former employees,<br><br>                              Plaintiffs,<br><br>          v.<br><br>CONOCOPHILLIPS COMPANY and DOES 1 through 10, inclusive,<br><br>                    Defendants. | Case No. CV08-2068 PSG (FFMx)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  June 18, 2012<br>Time:  1:30 p.m.<br>Place:   Courtroom 880<br><br>Judge:   Hon. Philip S. Gutierrez |

1

Richard P. Rouco (Admitted Pro Hac Vice)
(Email: rrouco@qwwdlaw.com)
QUINN CONNOR WEAVER DAVIES & ROUCO LLP
2700 Highway 280 East, Suite 380
Birmingham, Alabama 35223
Telephone:    (205) 870-9989
Fax:            (205) 803-4143

*Attorneys for Plaintiff USW*

2

**TO DEFENDANT AND ITS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on June 18, 2012, at 1:30 p.m., in Courtroom 880 of the above-entitled court, located at the Roybal Federal Building, 255 East Temple Street, Los Angeles, California, Plaintiffs Raudel Covarrubias, David Simmons, and Stephen S. Swader, Sr., and Plaintiff United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial & Service Workers International Union, AFL-CIO, CLC ("USW"), by and through their undersigned attorneys, will and do move for summary judgment or, in the alternative, partial summary judgment as to their First and Second Claims for Relief.

This motion will be made pursuant to Federal Rule of Civil Procedure 56 on the ground that there is no triable issue of material fact as to the following: 1) that ConocoPhillips has not provided a 30 minute meal break relieved of all duties for each of the subclasses of Operators and Lab Workers certified in this action; 2) that there has been no legal waiver or agreement excusing ConocoPhillips' obligation to provide such a meal break for the certified subclass of Operators from February 15, 2004 to February 6, 2009; and 3) that there has been no legal waiver or agreement excusing ConocoPhillips' obligation to provide such a meal break for the certified subclass of Laboratory Workers from February 15, 2004 through the end of the subclass period, June 8, 2009.

Plaintiffs are, therefore, entitled to summary judgment or, in the alternative, partial summary judgment for the given periods of time on the First and Second Claims for Relief.

This motion will be based on this Notice, the attached Memorandum of Points and Authorities, the Separate Statement of Uncontroverted Facts filed concurrently herewith, the Declaration of Joshua Young and Exhibits filed concurrently herewith, all pleadings and matters on file in this action, any matter of which the Court takes judicial notice, and oral argument to be made at the hearing of this motion.

/ / /

1

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on April 16, 2012, (Declaration of Joshua Young ("Young Dec."), ¶ 46.)

DATED:  April 30, 2012

**HADSELL STORMER KEENY RICHARDSON & RENICK LLP**

By: s/ *Randy Renick*

*Attorneys for Plaintiffs Raudel Covarrubias, David Simmons, and Stephen S. Swader Sr.*

**GILBERT & SACKMAN A Law Corporation**

By: s/ *Joshua F. Young*

*Attorneys for Plaintiff USW*

2

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ...................................................................................1

II.   STATEMENT OF FACTS ......................................................................2

    A.    Pertinent Procedural History .................................................2

    B.    Uncontroverted Facts Relating to ConocoPhillips' Failure to Provide Meal Breaks to Operators and Lab Workers........................................3

        1.    Operators and Laboratory Workers on 12-Hour Shifts Work on a Rotating Shift Schedule to Keep the Refineries Working Continuously……...................................................................3

        2.    Operators and Laboratory Workers Are Responsible for Their Units and Must Remain in Communication Throughout Their Shifts………………………......................................................4

        3.    ConocoPhillips' Policies Require Operators and Lab Workers to Be On Duty Throughout Their Shifts ........................................5

        4.    ConocoPhillips' Policies Do Not Provide Operators and Lab Workers with 30-Minute, Off-Duty Meal Periods ....................5

        5.    ConocoPhillips Implements Some Changes to its Meal Break Policies in 2009…...................................................................6

III.  ARGUMENT........................................................................................7

    A.    Summary Judgment Standard.................................................7

    B.    Employers Are Required to Provide 30 Minute Meal Periods Relieved of All Duties ........................................................................8

    C.    Plaintiffs Are Entitled to Summary Judgment on the Issue that ConocoPhillips Does Not Provide Off-Duty Meal Periods to Operators and Lab Workers ...............................................................11

i

D.   There Is No Genuine Issue of Material Dispute that ConocoPhillips' Obligation to Provide Meal Periods Relieved of All Duties to Operators Was Not Excused By Waiver or Agreement At Least Until February 6, 2009.................................................................19

E.   There Is No Genuine Issue of Material Dispute that ConocoPhillips' Obligation to Provide Meal Periods Relieved of All Duties to Lab Workers Was Not Excused By Waiver or Agreement Through the End of the Subclass Period, June 8, 2009....................................................21

F.   Plaintiffs Are Entitled to Summary Judgment on their Second Claim for Violation of Cal. Bus. & Prof. Code §17200 ...............................21

IV.   CONCLUSION..............................................................21

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Amalgamated Transit Union Local 1309, AFL-CIO v. Laidlaw Transit Servs., Inc.*,
2009 WL 2448430 (S.D. Cal. Aug. 10, 2009)...............................................20

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986).................................................................................7

*Armour & Co. v. Wantock*,
323 U.S. 126 (1944).................................................................................16

*Cervantez v. Celestica Corp.*,
618 F.Supp.2d 1208 (C.D. Cal 2009)...............................................17, 18, 19

*Chinese Daily News v. Wang*,
2011 U.S. LEXIS 6743 (U.S. Oct. 3, 2011) ......................................8

*Delagarza v. Tesoro Ref. & Mktg. Co.*,
No. C-09-5803 EMC, 2011 WL 4017967 ......................................14

*Gilmer v. Alameda-Contra Costa Transit District*,
2010 U.S.Dist. LEXIS 3405 (N.D. Cal 2010) .................................8

*Ketchum v. City of Vallejo*,
523 F.Supp.2d 1150 (E.D. Cal. 2007) .............................................8

*McFarland v. Guardsmark, LLC*,
538 F.Supp.2d 1209 (N.D. Cal. 2008)..............................................9

*Sandoval v. Rizzuti Farms, Ltd.*,
656 F.Supp.2d 1265 (E.D. Wash. 2009)...........................................8

*Valenzuela v. Giumarra Vineyards Corp.*,
614 F. Supp. 2d 1089 (E.D. Cal. 2009) ...........................................21

*Wang Laboratories, Inc. v. Mitsubishi Electronics America, Inc.*,
860 F.Supp. 1448 (C.D. Cal. 1993) ..................................................8

iii

*Wang v. Chinese Daily News*,
   2008 U.S.Dist. LEXIS 82538 (C.D. Cal. 2008) ...............................................8

**STATE CASES**

*Ahmed v. Good Nite Management*,
   2009 WL 715988 (Cal. Ct. App. 1 Dist. 2009) ..............................................16

*Bell v. Farmers Insurance Exchange*,
   87 Cal.App.4th 805 (2001) ...............................................................8

*Bono Enterprises, Inc. v. Bradshaw*,
   32 Cal.App.4th 968 (Cal. Ct. App. 5 Dist. 1995) ..................................16, 17

*Brinker Restaurant Corp. v. Superior Court*,
   2012 Cal. LEXIS 3149 (April 12, 2012) ...............................................*passim*

*Cicairos v. Summit Logistics, Inc.*,
   133 Cal.App.4th 949 (2005) ...........................................................10

*Cortez v. Purolator Air Filtration Products*,
   23 Cal.4th 163 (2000) ..................................................................21

*Madera Police Officers Association v. City of Madera*,
   36 Cal.3d 403 (Cal. 1984) .............................................................18

*Morillion v. Royal Packing Co.*,
   22 Cal.4th 575 (2000) ...............................................................17, 18

*Seymore v. Metson Marine, Inc.*,
   194 Cal.App.4th 361 (Cal. Ct. App. 1 Dist. 2011) ...........................16, 17, 18

*Tidewater Marine Western, Inc. v. Bradshaw*,
   14 Cal.4th 557 (1995) .................................................................16

**FEDERAL STATUTES**

Code of Federal Regulations
   § 785.19(a) ...........................................................................16

iv

Federal Rule of Civil Procedure
  § 30(b)(6) ...........................................................................................11
  § 56(a) .................................................................................................7

## STATE STATUTES

California Business & Profession Code
  § 17200 ...........................................................................................2, 21

California Labor Code
  § 226 ....................................................................................................8
  § 226.7 .........................................................................................*passim*
  § 226.7(a) ............................................................................................9
  § 227.3 .................................................................................................8
  § 512 ....................................................................................................8
  § 512(a) .........................................................................................9, 11

## MISCELLANEOUS

Industrial Welfare Commission Wage Order
  No. 1-2001 ..................................................................................*passim*
  No. 5...................................................................................................10

# I.   **INTRODUCTION**

Plaintiffs Raudel Covarrubias, David Simmons, and Stephen S. Swader, Sr., and Plaintiff United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial & Service Workers International Union, AFL-CIO, CLC ("USW"), on behalf of themselves and the classes which have been certified herein, move for summary judgment or, in the alternative, partial summary judgment on the following issues: (1) that ConocoPhillips has not provided a 30 minute meal break relieved of all duties for each of the subclasses of Operators and Lab Workers certified in this action; (2) that there has been no legal waiver or agreement excusing ConocoPhillips' obligation to provide such a meal break for the certified subclass of Operators from February 15, 2004 to February 6, 2009; [1] and (3) that there has been no legal waiver or agreement excusing ConocoPhillips' obligation to provide such a meal break for the certified subclass of Laboratory Workers from February 15, 2004 through the end of the subclass period, June 8, 2009.

Summary judgment of these issues will establish liability in favor of the plaintiff class on both of their claims for relief, for Operators through February 6, 2009, and for the Lab Workers, through the end of the class period, June 8, 2009. [2]  All that will remain to be tried in court is (1) the validity of the February 6, 2009 on-duty meal agreement; and (2) damages.

The undisputed evidence shows that ConocoPhillips did not provide Operators or Lab Workers with 30-minute meal periods during which they were relieved of all duties.  ConocoPhillips instead required its Operators and Lab Workers to take *on-duty* meal periods for which they were paid for hours worked only.  However, there was no waiver or on-duty meal period agreement covering Operators or Lab Workers during

---

[1] Plaintiffs do not concede the lawfulness of the "on-duty meal agreement" as to Operators that was ratified on or about February 6, 2009, but do not seek summary judgment of that issue here.

[2] All references to "Operators" and "Lab Workers" herein are to the operators and lab workers who fall within the subclasses of operators and laboratory workers certified in this action, respectively.

this period.  Without such a waiver or agreement, ConocoPhillips was required to provide off-duty meal periods and did not do so.  Summary judgment should, therefore, be granted in favor of plaintiffs; or, in the alternative, partial summary judgment.

## II.   STATEMENT OF FACTS

### A.   Pertinent Procedural History

The complaint in this matter was filed in Los Angeles Superior Court on February 15, 2008, and removed to the United States District Court for the Central District of California on March 27, 2008 under the Class Action Fairness Act.  The complaint alleges violations of California wage and hour laws based on ConocoPhillips' failure to provide to certain classes of employees a "thirty minute meal period totally relieved of all duties."  Complaint at ¶25.  The complaint states claims for relief under two state law causes of action: 1) California Labor Code Section 226.7 and Section 11 of the Industrial Welfare Commission Wage Order No. 1-2001, and 2) Cal. Bus. & Prof. Code §17200, with a four year statute of limitations.

On March 16, 2009, this Court denied Defendant's Motion for Summary Judgment as to Plaintiffs Raudel Covarrubias and David Simmons on the grounds that although plaintiffs usually did find time to eat, "they were not relieved of 'all duty'" when they did so.   Dkt. #99 at 7.

After this Court initially denied class certification, Plaintiffs appealed the decision, and it was reversed.  On October 27, 2011, this Court certified two subclasses:

1) All former, current, and future non-exempt hourly employees of Conoco who, at any time since February 15, 2004, worked as an operator on a shift schedule at a Conoco petroleum refinery located in Los Angeles, Santa Maria, or Rodeo California; and

2) All former and current non-exempt hourly employees of Conoco who, at any time from February 15, 2004 through June 8, 2009, worked in the laboratory on a shift schedule at a Conoco petroleum refinery located in Los Angeles, Santa Maria, or Rodeo, California.

SUF[3] 3, 4 [Order Granting Plaintiffs' Renewed Motion for Class Certification, Dkt. #326, at 18].

On April 16, 2012, counsel for plaintiffs met and conferred regarding the subject matter of this motion, and counsel for ConocoPhillips indicated they would oppose the motion. *See* Young Dec., ¶ 46.

### B.   Uncontroverted Facts Relating to ConocoPhillips' Failure to Provide Meal Breaks to Operators and Lab Workers

ConocoPhillips Company ("ConocoPhillips") operates two refineries in California, one in Los Angeles (consisting of the Carson and Wilmington facilities) and the other in San Francisco (consisting of the Rodeo and Santa Maria facilities).  SUF 1.  Each refinery operates continuously, 24 hours a day, seven days a week.  SUF 2.  The oil refining process is a dangerous operation that involves hazardous substances and has the potential for catastrophic consequences if something goes wrong.  SUF 16.

### 1.   Operators and Laboratory Workers on 12-Hour Shifts Work on a Rotating Shift Schedule to Keep the Refineries Working Continuously.

Employees at the refineries who work a "rotating shift schedule," meaning they are paid for all hours worked on their shift, are referred to as "shift workers" or "shift employees."  SUF 5.  Operators and certain Laboratory Workers who work 12-hour shifts are "shift employees."  SUF 8, 10.

There are generally two types of Operators: Console (also known as "Board" or "Inside") Operators and Field (or "Outside") Operators.  SUF 11.  Console Operators sit at control boards, called "consoles," inside a control facility and monitor and make adjustments to the levels, pressures, temperatures, and other indicators on equipment, products, and processes in their units to ensure that the units are operating properly.  SUF 12.  Outside Operators work outside in the units and in satellite operating shelters and they are responsible for maintaining, monitoring, inspecting, and making

---

[3] Citations to "SUF" are to the Separate Statement of Undisputed Facts and Conclusions of Law filed with this Motion.

adjustments to equipment at the direction of Console Operators and supervisors.  SUF 13.

To keep the refineries operating continuously, each unit has four crews of Operators who rotate between day and night shifts.   Every crew on every shift must have certain minimum "crew positions" filled by an Operator at all times.  SUF 7. Before they may be assigned to a crew position, Operators must complete a training program and become qualified.  SUF 9.

Laboratory Workers are responsible for running tests and analyses on samples of products made at the refinery, testing waste products to ensure they meet environmental specifications, and, when there is a unit upset, testing samples that Operators must rely on to bring the unit back within specification.  SUF 15.  Laboratory workers manage quality control of the oil products made in the refineries, analyze samples, and run tests on samples.  SUF 46.   Many of the tests run by Lab Workers must be run promptly. SUF 47.

### 2.   Operators and Laboratory Workers Are Responsible for Their Units and Must Remain in Communication Throughout Their Shifts.

Both Operators and Lab Workers on a 12-hour shift remain responsible for their units throughout their shifts.  SUF 17.  Operators receive radio calls, alarms, and work assignments at any time during their shifts.  SUF 19.  While Lab Workers do not respond to alarms, they receive calls and are responsible for running tests and maintaining equipment throughout their shifts.  SUF 47.

Operators must continuously and proactively monitor the refining process during their shifts.  SUF 18.  The refineries have alarms that alert Operators that the unit's processes or equipment is approaching or has exceeded the set operating limits and indicate emergencies or problems with the unit.  SUF 33.  Alarms sound frequently and unpredictably at any time of the day or night.  SUF 35.  When an alarm sounds, Operators are required to respond to the alarm by acknowledging the alarm and investigating the underlying cause.  SUF 34.

4

Operators are required to remain in communication with co-workers and supervisors at all times during their shifts. SUF 31. Operators rely on each other to isolate and resolve problems in the unit because Console Operators are stationed at the console where they cannot physically inspect or make manual adjustments to equipment and must rely on Outside Operators to be their "eyes and ears" outside in the unit, while Outside Operators must rely on Console Operator to identify potential and actual emergency situations from their console. SUF 14.

### 3. ConocoPhillips' Policies Require Operators and Lab Workers to Be On Duty Throughout Their Shifts.

ConocoPhillips' written policies require Operators and Lab Workers to remain on the refinery premises and in or near their work areas throughout their shifts. SUF 27. Before leaving their area or unit, they must obtain permission from their supervisor or have "proper authorized relief." SUF 28. Operators who leave their area or unit while still on their shift must carry their radios. SUF 28. They are not permitted to do anything during their shifts that would interfere with their ability to monitor their units, respond to radio calls, alarms, or unit upsets, and perform other work duties. SUF 19, 38. ConocoPhillips' written policies expressly prohibit sleeping, reading non-work-related materials, or watching movies or television at any time during their shifts. SUF 39, 41, 42. Personal cell phones are also prohibited from use in the process units where Operators work. SUF 43.

Based on ConocoPhillips' written policies, Operators and Lab Workers are subject to discipline for leaving a process unit without proper authorized relief or permission of a supervisor or failing to respond to radio or telephone calls during their shift. SUF 29, 32, 37. They also can be and have been subjected to discipline for sleeping during their shift. SUF 40.

### 4. ConocoPhillips' Policies Do Not Provide Operators and Lab Workers with 30-Minute, Off-Duty Meal Periods.

ConocoPhillips' policies do not provide Operators and Lab Workers with 30-minute meal periods during which they are relieved of all duties. First, ConocoPhillips

5

has no written policy governing meal periods for Operators or Lab Workers at the refineries.[4] SUF 22. Further, ConocoPhillips provides no training or education to the employees or their supervisors regarding the employees' right to take a meal period, including how, when, or how often meal periods should be taken or provided. SUF 21. ConocoPhillips also has no policy or practice of providing relief for employees to take meal breaks, and meal periods are neither designated nor scheduled. SUF 20, 44. Indeed, ConocoPhillips' payroll and timekeeping system, which keeps track of employees' hours, schedules, shifts, and positions worked, reflects that ConocoPhillips has and maintains no records of meal breaks. SUF 24, 25.

As a result of ConocoPhillips' failure to provide meal periods, Operators and Lab Workers eat on duty, typically right at their work stations or in the kitchen located mere steps away from their work areas, and only when their work allows. SUF 30. During upsets or other critical events, Operators and Lab Workers may go an entire shift without eating at all since they are on duty their entire shift. SUF 36.

### 5. ConocoPhillips Implements Some Changes to its Meal Break Policies in 2009.

At different junctures in 2009, after this action was filed, ConocoPhillips took actions affecting the meal break policies applicable to Operators and Lab Workers.

The refineries are covered by a single collective bargaining agreement between ConocoPhillips and USW. SUF 6. On February 6, 2009, after ConocoPhillips made a last, best, and final offer in bargaining over a new CBA, employees agreed to a CBA containing an "on-duty meal period agreement" drafted by ConocoPhillips covering Operators.[5] SUF 50. The Individual Plaintiffs dispute the validity of the "on duty meal

---

[4] ConocoPhillips's only written policy governing employees' meals (not meal periods) deals with *overtime* meals, which arise only when an employee works beyond his or her regularly scheduled hours. SUF 23.

[5] In March 2009, ConocoPhillips also implemented a procedure for paying for missed meal periods. SUF 26. Plaintiffs dispute that this practice is sufficient to comply with California law's requirement for penalty pay. There is no dispute, however, that ConocoPhillips did not pay Operators or Lab Workers an extra hour of pay for a missed meal period prior to March 2009. SUF 26.

period agreement" for a variety of reasons, including the fact that the on-duty meal agreement contemplates that employees *could* receive off-duty meals if ConocoPhillips chose to provide relief. In any event, no meal period waiver has ever been mutually agreed to by ConocoPhillips and any Operator at any time.  SUF 45.  Thus, it is undisputed that no on-duty meal period agreement or waiver of an Operator's right to an off-duty meal period was in place covering Operators until February 6, 2009.  SUF 46, 51.

ConocoPhillips also changed Lab Workers' shift schedules on June 8, 2009.  On that date, Lab Workers began a 13-hour shift during which they received 30-minute meal periods relieved of all duty.  SUF 49.  Until then, they had been required to remain on duty, in or near the laboratory, for the duration of their shifts unless they had permission to leave.  SUF 48.  Like Operators, Lab Workers also have never agreed to waive their right to an off-duty meal period.  SUF 45. Thus, it undisputed that no on-duty meal period agreement or waiver of a Lab Worker's right to an off-duty meal period was in place between ConocoPhillips and the Lab Workers before June 8, 2009, when ConocoPhillips began providing Lab Workers with off-duty meal periods. [6]  SUF 45, 50.

## III.  <u>ARGUMENT</u>

### A.    **Summary Judgment Standard**

Summary judgment should be granted when there "is no genuine issue as to any material fact."  F. R. Civ. P. 56(a) (2010 Amendment).  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) [citations omitted].

Summary judgment may be granted as to any claim or defense, or any part of a

---

[6]  As of March 30, 2010, Lab Workers have returned to a 12-hour shift with an "on duty" meal period agreement in place.  SUF 50.

1   claim or defense, and may be granted for plaintiff as well as defendant.  *Id*; *see, e.g.,*

2   *Wang Laboratories, Inc. v. Mitsubishi Electronics America, Inc.*, 860 F. Supp. 1448

3   (C.D. Cal. 1993).

4        Wage and hour class actions are as amenable to summary judgment as any other

5   type of case.  *See, e.g. Wang v. Chinese Daily News*, 2008 US Dist LEXIS 82538 (C.D.

6   Cal. 2008), *vacated and remanded on other grounds*, *Chinese Daily News v. Wang*,

7   2011 U.S. LEXIS 6743 (U.S. Oct. 3, 2011) (plaintiffs granted summary judgment on

8   behalf of certified class of employees on claims for violations of California Labor Code

9   § 227.3 and 226.); *Ketchum v. City of Vallejo*, 523 F. Supp. 2d 1150 (E.D. Cal. 2007)

10  (plaintiffs' motion for summary adjudication granted in Fair Labor Standards Act

11  (FLSA) collective action*), Gilmer v. Alameda-Contra Costa Transit Dist.*, 2010 U.S.

12  Dist. LEXIS 3405 (N.D. Cal. 2010) (plaintiffs' summary judgment granted in part and

13  denied in part in FLSA collective action); *Sandoval v. Rizzuti Farms, Ltd.*, 656 F. Supp.

14  2d 1265 (E.D. Wash. 2009) (plaintiffs' summary judgment motion granted in part and

15  denied in part in agricultural wage and hour class action); *see also Bell v. Farmers*

16  *Insurance Exchange,* 87 Cal.App. 4th 805 (2001) (certified class granted summary

17  judgment in action to recover unpaid overtime).

     **B.**    **Employers Are Required to Provide 30 Minute Meal Periods Relieved
of All Duties**

18

19       This Court is familiar with plaintiffs' legal theory, having ruled now on three

20  motions for class certification, and defendants' motions for summary judgment.

21  California Labor Code Section 512 provides in pertinent part that:

22

23      An employer may not employ an employee for a work period of more than five
    hours per day without providing the employee with a meal period of not less than

24      30 minutes . . . . An employer may not employ an employee for a work period of
    more than 10 hours per day without providing the employee with a second meal

25      period of not less than 30 minutes, except that if the total hours worked is no
    more than 12 hours, the second meal period may be waived by mutual consent of

26      the employer and the employee only if the first meal period was not waived.

27  *Id.* §512(a).  Cal. Labor Code Section 226.7 provides that: "[n]o employer shall require

28  any employee to work during any meal or rest period mandated by an applicable order

8

of the Industrial Welfare Commission."  *Id.* at §226.7(a).  If "an employer fails to provide an employee a meal or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided."  *Id.* at §226.7(b).

Wage Order 1-2001, Section 11, provides in pertinent part that:

(c) Unless the employee is relieved of all duty during a 30-minute meal period, the meal period shall be considered an "on duty" meal period and counted as time worked.  An "on-duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to.  The written agreement shall state that the employee may, in writing, revoke the agreement at any time.

An on-duty meal period agreement is not a waiver (*McFarland v. Guardsmark, LLC*, 538 F.Supp.2d 1209, 1216-17 (N.D. Cal. 2008)) and the circumstances under which meal periods may be waived by mutual consent of employer and employee are limited. Any employee who works more than six hours in a day may not waive the right to receive at least one 30-minute meal period relieved of all duty. Cal. Lab. Code § 512(a); Wage Order 1-2001, § 11(B).

The <u>only</u> situation in which an employer may avoid paying the required premium for a missed meal period is when the "nature of the work prevents an employee from being relieved of all duty" ***and*** when the parties have executed a written contract, which must state that it is revocable by the employee at any time, agreeing to an "on-the-job paid meal period." Wage Order 1-2001, § 11(C).  Therefore, unless an employee enters into a valid meal period waiver or on-duty meal period agreement, he or she must be provided with meal periods that are completely relieved of all work duties.  If the employee is not relieved of all duty during meal periods, he or she is entitled to compensation for work performed during such times as "hours worked," <u>plus</u> "one (1) hour of pay at the employee's regular rate of compensation for each work day that the meal period is not provided." Wage Order 1-2001 §§ 2(G), 11(D); Cal. Lab. Code § 226.7.

After much anticipation, in *Brinker Restaurant Corp. v. Superior Court*, 2012 Cal. LEXIS 3149 (April 12, 2012), the Supreme Court elucidated the issue of meal and rest breaks for all California employers, and provided special guidance on the question of an employer's duty to provide meal breaks relieved of all duty.  Specifically, the Supreme Court held that an "on-duty meal period is one in which an employee is not 'relieved of all duty' for the entire 30-minute period. . . . [and] [a]n off duty meal period, therefore is one in which the employee "*is* relieved of all duty during the 30 minute meal period."  *Brinker*, 2012 Cal. LEXIS 3149, at *54.

The high court explained that a "'duty-free' meal period is necessary for the welfare of employees," and that the "worker must be free to attend to any personal business he or she may choose during the unpaid meal period."  *Id.*at *52-*54.  The Supreme Court quoted and approved California Department of Labor Standards Enforcement ("DLSE")'s opinion letters which clarified that an employer satisfies the applicable Wage Order's[7] meal period requirement if an employee: (1) has at least 30 minutes uninterrupted; (2) is free to leave the premises, and (3) is relieved of all duty for the entire period.  *Brinker*, 2012 Cal. LEXIS 3149, *54.  In sum, "an employer's obligation when providing a meal period is to relieve its employee of all duty for an uninterrupted 30-minute period."  *Id.*at * 57-58.

The California Supreme Court went on to hold that an employer does not have a duty to *ensure* that its employees do no work during that period, holding fast to its conclusion that an employer has a duty to *provide* the duty-free meal period.  *Id.*at *58-*64.  In so doing, the court cited approvingly the case of *Cicairos v. Summit Logistics, Inc.*, 133 Cal. App. 4th 949, 962-963 (2005), for the proposition that "an employer may not undermine a formal policy of providing meal breaks by pressuring employees to perform their duties in ways that omit breaks."  *Id.*at *63-*64.

---

[7] Although *Brinker* cited to Wage Order Number 5, the language in that Wage Order's Section 11 relating to on-duty meal periods is identical to that in Wage Order Number 1-2001, Section 11.

10

In *Brinker*, the Supreme Court held that:

> When someone is "suffered or permitted" to work –i.e., employed-- for five hours, an employer is put to a choice: it must (1) afford an off duty meal period; (2) consent to a mutually agreed waiver if one hour or less will end the shift; or (3) obtain written agreement to an on duty meal period if circumstances permit.

*Brinker*, 2012 Cal LEXIS at *62. Here, ConocoPhillips made none of those choices. Instead, employees' duties persist throughout their meals because they are never relieved of their responsibilities, or provided with a duty-free meal in the first instance. Summary judgment is appropriate.

### C.   Plaintiffs Are Entitled to Summary Judgment on the Issue that ConocoPhillips Does Not Provide Off-Duty Meal Periods to Operators and Lab Workers

Here, the undisputed evidence shows that ConocoPhillips does not *provide* 30 minute meal breaks relieved of all duties, but rather, has a formal policy that its shift Operators and Lab Workers are on duty during their entire shifts.  Operators and Lab workers generally work 12-hour shifts while employed by ConocoPhillips; thus, they are entitled to two 30-minute meal periods per shift, during which they must be relieved of all duties. Cal. Lab. Code § 512(a); Wage Order 1-2001, § 11(C).

As set forth more fully in the Separate Statement of Undisputed Facts filed concurrently herewith, the evidence shows that ConocoPhillips mandates that all Operators and Lab Workers be on duty and remain in their work area or unit throughout their entire shift unless they receive their supervisor's permission to leave or receive "proper authorized relief" (i.e., when the next crew takes over their responsibilities and the next shift commences).  The evidence further shows that ConocoPhillips does not provide Operators or Lab Workers with relief personnel, and that it subjects them to discipline in accordance with company policy if they are not prepared to or do not promptly respond to alarms or radio calls during their shifts.  ConocoPhillips cannot reasonably dispute this evidence as it is largely comprised of ConocoPhillips' own written policies and the deposition testimony of its corporate representative under Fed.R.Civ.P. 30(b)(6), Human Resources Manager Patrick Prosser.

11

HR Manager Prosser testified that Operators are on duty for the entire 12-hour shift because it is a "continuous process that needs to be monitored." Ex. 1-25 through 26 to Young Decl., Prosser Depo., 63:13-64:4. As Mr. Prosser put it, monitoring the process is "being there" and "being able to react" and "respond." Ex. 1-27 to Young Decl., Prosser Depo., 65:13-17. This is consistent with the written job descriptions for Operators, which state that "Operators must be alert and respond efficiently" to changing conditions. Ex. 16, p. 2 to Young Decl., USWCOP00048164 (Job Analysis – Unit 250 Outside Operator) ("Operators must be alert and respond efficiently to changing process conditions. (Essential)"); *see also* Ex. 25, p. 1 to Young Decl., USWCOP00048358 (Job Analysis-Refinery Operator- SPP Unit Operator (Board Operator) (Bulk)) (Job Description: Constantly monitors the control board for changing Unit conditions). This is also consistent with ConocoPhillips' Operating Procedures for response to alarms, which provides: "**All Operators** who use an operating procedure are responsible and accountable for… [a]cknowledging and silencing alarms during an emergency situation, if applicable.". Ex. 1, p. 5 to Buzas Decl., USWCOP00116105 (San Francisco Refinery Operating Procedures Policy); *see also* Ex. 1, p. 17 to Buzas Decl., USWCOP00117137 (Rodeo Refinery Alarm Guide) ("DEFINITION OF AN ALARM: **An alarm is information to the Console Operator that prompt action is required to correct a condition in the operating unit.**").

As Mr. Prosser testified, monitoring the process also requires being in radio communication and being prepared to respond to a call. Prosser Dep., 66:11-14, Ex. 1-28 to Young Decl. (operators are in "close proximity, they have radio communication, so if there is an issue that the head operator would need to attend to immediately, they would be able to attend to it."); 94:5-12, Ex. 1-34 to Young Decl. (discipline meted out to operators who fail to respond to a radio call or command); 94:18-95:22, Ex. 1-34 through 35 to Young Decl. (it is "rare" that an employee cannot be located because "it's expected that they have a radio; and that's our means for communication…").

ConocoPhillips' written policies also require Operators and Lab Workers to stay

12

on premises in their work area throughout their shifts.  They may only leave their
operating area with their supervisor's permission and with proper authorized relief (i.e.,
next crew has commenced its shift and taken over each of the responsibilities).  Ex. 1, p.
3 to Buzas Decl., USWCOP00116035 (San Francisco Refinery Code of Conduct
stating: "Leaving an assigned work area without permission of a Supervisor is
prohibited." and "Leaving a process unit as designated without proper authorized relief
or permission of a Supervisor is prohibited."); USWCOP00118855 (Ex. 1, p. 61 to
Covarrubias Decl.)  (Los Angeles Refinery Safe Work Expectations prohibiting
"[l]eaving an assigned work area without permission of a Supervisor" and "[l]eaving a
process unit as designated without proper authorized relief or permission of a
Supervisor."); Ex. 6-1, p. 15  to Young Decl., (2008 Los Angeles Refinery Policies and
Procedures Manual) ("No employee shall leave his/her job assignment until properly
relieved."); *see also* Prosser Dep., 61:22-62:4, Ex. 1-23  through 24 to Young Decl.
("[A]n operator is allowed to leave his operating area by the permission of the head
operator or someone in charge of the unit.  The unit can never be unmanned."); 62:9-
63:10, Ex. 1-24 through 25 to Young Decl. (12-hour shift workers cannot leave the
refinery and must be "on the unit, unless excused with permission to go somewhere else
within the refinery…They are not permitted to leave the unit…").

Further, as Mr. Prosser testified and as reflected in the company written policies,
ConocoPhillips does not provide for either designated meal periods or relief personnel
to Operators or Lab Workers so they can take off-duty meal periods.  Ex. 6-1, p. 15  to
Young Decl., (2008 Los Angeles Refinery Policies and Procedures Manual), p. 14
("Shift workers have no designated lunch break as they work a straight ten or twelve-
hour schedule"); Prosser Depo. at 63:13-16, 66:15-67:2, Ex. 1-25, and 28 through 29 to
Young Decl. (no relief personnel in the refinery); 88:25-90:18, Ex. 1-31, and 33
through 29 to Young Decl. (lab workers on duty for duration of the 12-hour shift);
130:15-24, Ex. 1-48 to Young Decl. (no relief personnel for Operators); 131:14-132:1,
Ex. 1-49 through 50 to Young Decl. (no relief personnel for lab employees).

1  Finally, ConocoPhillips' records reflect that it enforces on-duty shift

2  requirements for shift employees by disciplining those who try to take a break from

3  their duties during their shift.  Ex. 15 and 27 to Young Decl., USWCOP00157116-17;

4  USWCOP00157119-21; and USWCOP00119367-400 (reflecting multiple incidents of

5  discipline at the Los Angeles and Rodeo Refineries for violation of rules, including

6  leaving an assigned work area without permission); *see also* Prosser Dep., 94:18-95:3,

7  Ex. 1-34 through 35 to Young Decl. (employees disciplined for sleeping on the job,

8  "unable to respond").  The "on-duty" nature of the shift employees' work may be best

9  described by ConocoPhillips' admonition in the disciplinary notice to a Board Operator

10  who failed to respond to alarms: "You work in a safety and environmentally sensitive

11  job which requires you *to remain attentive at all times*.  Ex. 15, p. 1 to Young Decl.,

12  USWCOP00115716 (emphasis added).  In a recent email to employees,

13  ConocoPhillips has repeatedly defended its position by arguing that shift

14  employees are usually able to eat their meals, often without any interruption.  However,

15  as this Court has already held on a number of occasions, "an employee's ability to eat

16  without an alarm going off or any other interruption does not mean that Conoco

17  'provided' . . . an off-duty meal period."  Order Granting Renewed Motion for Class

18  Certification, Dkt #326 at 16.  Indeed, this Court has already noted in the class

19  certification process, "Plaintiffs' facts support the contention that it was Conoco's

20  policy *never* to provide off-duty meal periods, a contention that applies to the entire

21  class of lab workers and operators."  *Id.*; *citing Delagarza v. Tesoro Ref. & Mktg. Co.*,

22  No. C-09-5803 EMC, 2011 WL 4017967 at *21.

23  The arguments Defendant has advanced in its prior motions for summary

24  judgment and in opposition to class certification, that plaintiffs in fact have time to eat

25  most days, does not defeat summary judgment in plaintiffs' favor.  The California

26  Supreme Court in *Brinker* made clear that a meal period's "*duty-free nature*" is its

27  "defining characteristic." *Brinker*, 2012 Cal. LEXIS at *51 (emphasis added).  Whether

28  an employee ate is irrelevant.  As in *Delagarza*, "differences as to whether plaintiffs

14

had sufficient time to eat and whether there was a policy prohibiting meals altogether does not negate the broader question of whether employees are on-call during the meal periods." 2011 U.S. Dist. LEXIS 101127 at *23-*24.

Indeed, in a case with very similar facts, Judge Klausner granted a motion for summary judgment on behalf of the plaintiffs in a case brought against other oil refiners. In that case, Judge Klausner ruled that the plaintiffs had established that they were not provided with meal breaks relieved of all duty, and granted summary judgment under Wage Order 1-2001(C). *See* Dkt #248-1 (Order Granting Partial Summary Judgment in Case No. 2:08-cv-03693-RGK-E). Just as here, the plaintiffs in that case were subject to a variety of restrictions throughout their shifts, including the requirement to be in communication at all times, remain on the refinery premises, and refrain from sleeping, reading newspapers, or watching movies during their breaks, and their supervisors did not keep track of when employee breaks were taken. *Id.* at p. 6. Judge Klausner noted that while "some of these duties may be delayed at employees' discretion until a break is completed, certain situations require immediate response." *Id.* at p. 6. Judge Klausner also noted, "[t]he mere ongoing requirement to remain on the premises at ready to respond to calls *is a duty in and of itself* sufficient to show that plaintiffs were not relieved of all duty." *Id.* at p. 7 (emphasis added).

Judge Klausner's order is consistent with decisions of other courts and opinion letters issued by the DLSE. In a recent opinion letter, the DLSE addressed the issue of "on duty" meal periods in the context of drivers who are engaged in the transportation of hazardous explosive materials, who were prohibited from leaving their vehicles unattended at any time during their 12-hour shifts. DLSE Op. Ltr. No. 2009.06.09, Ex. 16 to Fang Decl. The DLSE concluded that an employee is not "relieved of all duty" where he "is not free to use [the] time [spent attending to the vehicle] for his or her own use but is, in fact, engaged in work duties for the benefit of the Company." *Id.* at 5. Significantly, the DLSE likened the drivers' work to an industrial facility such as a refinery, stating that the drivers' duty to attend to their vehicles was "not unlike the

15

monitoring of the continuous operation of machinery that is essential to the business of an employer." *Id.* at 7-8 (emphasis added).

Other courts have found that employees with continuing obligations and responsibilities are considered to be "on duty" regardless of whether they are engaged in "active" tasks, and even when they are allowed to engage in certain limited personal activities. *See Bono Enterprises, Inc. v. Bradshaw*, 32 Cal.App.4th 968, 976 (Cal. Ct. App. 5 Dist. 1995) *disapproved on other grounds in Tidewater Marine Western, Inc. v. Bradshaw*, 14 Cal.4th 557, 573-74 (1995) ("employee is not relieved if he is required to perform any duties, <u>whether active or inactive</u>, while eating") (emphasis added); *Ahmed v. Good Nite Management*, 2009 WL 715988, *17 (Cal. Ct. App. 1 Dist. 2009) (affirming trial court's conclusion that the plaintiff was owed wages for missed meal periods where plaintiff did not receive valid meal breaks, but, rather, "ate while working"). Courts interpreting California law "may look to federal authorities construing parallel federal statutes for guidance." *Bono*, 32 Cal.App.4th at 975-76; *accord Seymore v. Metson Marine, Inc.,* 194 Cal.App.4th 361, 367-68 (Cal. Ct. App. 1 Dist. 2011) (although the IWC Wage Orders are "at times patterned after" Fair Labor Standards Act ("FLSA") regulations, the Wage Orders can "provide greater protection" than is provided in the FLSA).  FLSA regulations in the meal period context provide that: "The employee must be completely relieved of all duty for the purposes of eating regular meals …. The employee is not relieved if he is required to perform <u>any duties, whether active or inactive</u>, while eating.  For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating."  29 C.F.R. § 785.19(a) (emphasis added); *see Armour & Co. v. Wantock*, 323 U.S. 126, 128, 133-34, 65 S.Ct. 165 (1944) (time during which fire fighters are required to be on the employer's premises, subject to call in case of a fire, constituted "working time" in the FLSA context, even when employees were permitted to engage in personal activities such as cooking, sleeping, listening to radios, and playing cards).

16

Neither courts nor the DLSE make any distinction between so called "active" and "inactive" work duties in determining whether an employee's time is compensable as "hours worked."  In *Seymore v. Metson Marine*, 194 Cal.App.4th at 362, the court held that three hours of meal time and one hour of "free time" considered by the employer to be off-duty "standby" time was compensable as "hours worked."  During this "standby" time, employees could leave the boat on which they worked, but were required to carry a cell phone or pager, and were further required to be able to return to the ship within 30 to 45 minutes of an emergency call.  Employees were prohibited from consuming alcohol during "standby time," but were otherwise "free to pursue whatever activities they chose" so long as they could return to the ship within the prescribed time.  *Id.* at *7. The court held that the required response time, in combination with the requirement that the employees return to the boat each night to sleep, "significantly affect[ed] and limit[ed] what the employees [could] and [could not] do during the four nonsleeping hours."  *Id.* at *11. In other words, "the restrictions placed on plaintiffs' whereabouts significantly restricted their ability to pursue activities of their choice."  *Id.*

Indeed, courts have held that even if an employee is allowed some measure of freedom to engage in personal activities, an employer's "control" over an employee will render the time compensable if the employer's restrictions essentially "prevent[] the employee from using the time effectively for his or her own purposes."  *Bono*, 32 Cal.App.4th at 975; *see Morillion v. Royal Packing Co.*, 22 Cal.4th 575, 586 (2000) (time spent riding on employer-provided buses was compensable and thus "on duty," despite the fact that employees were permitted "to engage in limited activities such as reading or sleeping," because employees could not use "the time effectively for [their] own purposes," *e.g.*, to drop their children off at school, stop for breakfast before work, or run other errands requiring the use of their car); *Cervantez v. Celestica Corp.*, 618 F.Supp.2d 1208, 1215 (C.D. Cal. 2009) (time spent waiting in line and passing through the employer's security screening process at the start and end of each shift constituted "hours worked," notwithstanding that employees could engage in personal activities

such reading, socializing, or drinking coffee, because plaintiffs could not effectively use time for personal purposes); *Seymore*, 2011 WL 1438510 at *2, 7 ("standby time" was compensable even though employees were free to run personal errands, go for a walk, get a meal, watch television, use the Internet, or make personal phone calls).

Given the nature of their jobs, Operators and Lab workers in this case are necessarily subject to even greater restrictions than those at issue in these "hours worked" cases. Moreover, these restrictions, which are for the purpose of ensuring the safe and stable operations of the refinery, are imposed on employees solely for ConocoPhillips' benefit. *See Madera Police Officers Assn. v. City of Madera*, 36 Cal.3d 403, 412 (Cal. 1984). Like the employees in *Seymore* and *Madera*, Operators and Lab workers are required to be available to address problems that arise and respond to employer communications at all times during their shifts, including when they eat. SUF 38, 47, 48. Moreover, like the employees in *Madera*, Shift workers cannot eat when they please, but they must wait until their work allows them an opportunity to do so. SUF 20. However, unlike the employees in *Seymore* and *Madera*, Operators and Lab workers are <u>not allowed to leave their assigned posts</u>, even during meals. Operators' obligations to monitor their units and perform other work tasks in response to alarms and conditions in their units do not diminish in any way while they are eating. Lab workers are similarly required to staff the lab 24 hours a day so that tests can be run at any time. SUF 48.

Furthermore, unlike the employees in *Madera*, *Seymore*, *Morillion*, and *Cervantes*, who were free to engage in a wide range of personal activities while they ate, Operators are subject to much more severe restrictions on their ability to engage in personal activities. The *Morillion* and *Cervantez* courts found that the employer policies at issue in those cases significantly restricted the ability of the plaintiffs to use "the time effectively for [their] own purposes." *Morillion*, 22 Cal.4th at 586. However, those employees were at least able to read non-work-related material, take a nap, or engage in other similar personal activities. In the present case, Operators are prohibited

18

from engaging in even these common break-time activities.  SUF 39-43.  Even if Operators have time during their shifts to engage in some personal activities, their time and ability to do so are dictated by conditions in their units and work requests from co-workers and supervisors.  Thus, their ability to engage some limited personal activities does not mean that Operators are able to use their time "effectively for [their] own purposes."  *See Cervantez*, 618 F.Supp.2d at 1215 (allowing employees the "circumscribed activities" of "conversing with other co-workers socially or drinking a cup of coffee," does not "affect, much less eliminate" the control exercised by the employer) (internal quotation marks and citations omitted).

Because it is undisputed that, even though employees eat, they are subject to a variety of restrictions and duties which persist throughout their shifts, there is no genuine issue of *material* fact that Operators and Lab Workers were not provided duty-free meal breaks.  As the Supreme Court held in *Brinker*, "[t]he employer that refuses to relinquish control over employees during an owed meal period violates the duty to provide the meal period and owes compensation and premium pay for hours worked."  2012 Cal. LEXIS at *63 (brackets omitted).  ConocoPhillips has not relinquished control over its employees during their meal breaks, and thus, owes not only compensation but also premium pay under California Labor Code § 226.7.  Summary judgment is appropriate.

**D.  There Is No Genuine Issue of Material Dispute that ConocoPhillips' Obligation to Provide Meal Periods Relieved of All Duties to Operators Was Not Excused By Waiver or Agreement At Least Until February 6, 2009.**

Having established that ConocoPhillips does not provide for meal periods relieved of all duties, the next issue is whether the meal periods at issue is whether ConocoPhillips is relieved of its responsibility to provide off-duty meals by agreement.  Wage Order 1-2001 Section 11(c) specifies the conditions that must be met in order for an on duty meal period to be lawful:

An 'on duty' meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1    agreement between the parties an on-the-job paid meal period is agreed to.  The
2    written agreement shall state that the employee may, in writing, revoke the
     agreement at any time.

3    *Id.*

4        While plaintiffs do not concede that the first part of this test has been met, it is

5    not necessary to decide that issue, since it is uncontested that ConocoPhillips did not

6    meet the second part of this test until February 6, 2009.  Until that date, there was no

7    written agreement between ConocoPhillips and the Operators stating (1) that an on-the-

8    job meal period is agreed to and (2) that the employee may, in writing, revoke the

9    agreement at any time.  Thus, Plaintiffs are entitled to summary judgment on this issue

10   for the period of time from February 15, 2004 to February 6, 2009.

11       ConocoPhillips may argue that CBAs extant prior to February 6, 2009 constituted

12   on-duty meal agreements.  That argument is plainly false because no CBA prior to

13   February 6, 2009, stated that (1) that an on-the-job meal period is agreed to and (2) that

14   the employee may, in writing, revoke the agreement at any time.  Accordingly, the prior

15   CBAs cannot be considered on-duty meal agreements.  *Amalgamated Transit Union*

16   *Local 1309, AFL-CIO v. Laidlaw Transit Servs., Inc.*, 2009 WL 2448430, *5 (S.D. Cal.

17   Aug. 10, 2009) (an on-duty meal period agreement that does not contain any language

18   about revocability is invalid).

19       Plaintiffs do not seek summary judgment regarding the first prong of the Section

20   11(c) test although Plaintiffs vigorously dispute that the February 6, 2009, agreement is

21   valid for a variety of reasons.  The agreement is suspect on its face because it

22   contemplates that an individual employee, if he or she chooses to revoke the agreement,

23   will be provided with an *off-duty* meal by ConocoPhillips in lieu of a premium

24   payment.  But in order for an on-duty meal agreement to be valid under Section 11(c),

25   the nature of employees' work must *prevent* ConocoPhillips from providing an off-duty

26   meal, the very thing ConocoPhillips says it will do if employees revoke the agreement.

27   As the Court has noted, ConocoPhillips has never explained why it is not possible "to

28   have a relief operator available to cover Plaintiffs' stations while [employees] [take] a

meal period" or that "each operator is specially trained or qualified to cover only his or her own console." Dkt #99 at p.8.  The agreement is also suspect for other reasons, including an illusory grievance procedure and the circumstances surrounding its inception.  However, Plaintiffs do not seek summary judgment now on the agreement's validity. The question of whether liability for Operators continues past February 5, 2009, is an issue that can be resolved at trial or, if the Court prefers, via an additional summary adjudication motion prior to trial.

**E.    There Is No Genuine Issue of Material Dispute that ConocoPhillips' Obligation to Provide Meal Periods Relieved of All Duties to Lab Workers Was Not Excused By Waiver or Agreement Through the End of the Subclass Period, June 8, 2009.**

As for Lab Workers, ConocoPhillips did not begin providing off-duty meal periods until June 8, 2009.  SUF 50.  However, prior to June 8, 2009, as with the Operators, there is no dispute that there was no meal break waiver or written on-duty meal period agreement that meets the requirements of Wage Order 1-2001, Section 11(C).   Thus, summary adjudication is appropriate as to this time period for the Lab Workers as well.

**F.    Plaintiffs Are Entitled to Summary Judgment on their Second Claim for Violation of Cal. Bus. & Prof. Code §17200**

In addition to Plaintiffs' First Claim for Relief under Labor Code §226.7, plaintiffs are also entitled to summary judgment on their Second Claim for Violation of Cal. Bus. & Prof. Code §17200.  It is well established that plaintiffs can assert a claim under §17200 for violations of meal period requirements.  *See, e.g., Cortez v. Purolator Air Filtration* Products, 23 Cal. 4th 163, 168 (2000); *Valenzuela v. Giumarra Vineyards Corp.*, 614 F. Supp. 2d 1089, 1103 (E.D. Cal. 2009).   For the same reasons that Plaintiffs are entitled to summary judgment on their First Claim, they are entitled to summary judgment on the Second Claim.

# IV.    <u>CONCLUSION</u>

For the reasons stated herein, plaintiffs respectfully request summary judgment or, in the alternative, partial summary judgment on the issues: (1) that ConocoPhillips

1   has not provided a 30 minute meal break relieved of all duties for each of the subclasses

2   of Operators and Lab Workers certified in this action; (2) that there has been no legal

3   waiver or agreement excusing ConocoPhillips' obligation to provide such a meal break

4   for the certified subclass of Operators from February 15, 2004 to February 6, 2009; and

5   (3) that there has been no legal waiver or agreement excusing ConocoPhillips'

6   obligation to provide such a meal break for the certified subclass of Laboratory

7   Workers from February 15, 2004 through the end of the subclass period, June 8, 2009.

8

9

10   DATED:  April 30, 2012                    **HADSELL STORMER KEENY RICHARDSON & RENICK LLP**

11

12                                            By: s/ *Randy Renick*

13                                            *Attorneys for Plaintiffs Raudel Covarrubias, David Simmons, and Stephen S. Swader Sr.*

14                                            **GILBERT & SACKMAN A Law Corporation**

15

16                                            By: s/ *Joshua F. Young*

17                                            *Attorneys for Plaintiff USW*

18

19

20

21

22

23

24

25

26

27

28