Anne Richardson (California Bar No. 151541)
(Email: arichardson@hadsellstormer.Com)
Randy Renick (California Bar No. 179652)
(Email: rrr@ hadsellstormer.Com)
Cornelia Dai (California Bar No. 207435)
(Email: cdai@ hadsellstormer.Com)
**HADSELL STORMER**
**RICHARDSON & RENICK, LLP**
128 North Fair Oaks Avenue, Suite 204
Pasadena, California 91103-3645
Telephone:    (626) 585-9600
Fax:              (626) 577-7079
*Attorneys For Plaintiffs Raudel Covarrubias, David Simmons, And Stephen S. Swader*

Jay Smith (California Bar No. 166105)
(Email: Js@Gslaw.Org)
Joshua F. Young (California Bar No. 232995)
(Email: Jyoung@Gslaw.Org)
**GILBERT & SACKMAN**
**A LAW CORPORATION**
3699 Wilshire Boulevard, Suite 1200
Los Angeles, California 90010
Telephone:    (323) 938-3000
Fax:              (323) 937-9139
*Attorneys For Plaintiff USW*
[Additional Counsel Listed On Next Page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STEEL, PAPER & FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL & SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC, on behalf of its members employed by defendants, and RAUDEL COVARRUBIAS, DAVID SIMMONS AND STEPHEN S. SWADER, SR., individually and on behalf of all similarly situated current and former employees,<br>　　　　　　　　Plaintiffs,<br>　　v.<br>CONOCOPHILLIPS COMPANY and DOES 1 through 10, inclusive,<br>　　　　　　　　Defendants. | Case No. CV08-2068 PSG (FFMx)<br><br>Hon. Philip S. Gutierrez<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES AND COSTS**<br><br>Submitted Concurrently with:<br>1) Motion for Final Approval of Settlement Agreement; 2) Plaintiffs' Confidential Memorandum Re: Merits and Value Of Settlement; and 3) Plaintiffs' Memorandum Re: Proposed Incentive Awards to Named Plaintiffs<br><br>DATE:　May 6, 2013<br>TIME:　1:30 p.m.<br>LOCATION: Courtroom 880<br><br>Judge:　Hon. Philip S. Gutierrez |

1

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES AND COSTS**

| | |
|---|---|
| 1 | Richard P. Rouco (Admitted Pro Hac Vice) |
| | (Email: rrouco@qwwdlaw.com) |
| 2 | QUINN CONNOR WEAVER DAVIES & ROUCO LLP |
| 3 | 2700 Highway 280 East, Suite 380 |
| | Birmingham, Alabama 35223 |
| 4 | Telephone:   (205) 870-9989 |
| | Fax:         (205) 803-4143 |

*Attorneys for Plaintiff USW*

2

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES AND COSTS**

**TO DEFENDANT AND ITS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on May 6, 2013 at 1:30 p.m., in Courtroom 880 of the above-entitled court, located at the Roybal Federal Building, 255 East Temple Street, Los Angeles, California, Plaintiffs Raudel Covarrubias, David Simmons, and Stephen S. Swader, Sr., and Plaintiff United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial & Service Workers International Union, AFL-CIO, CLC ("USW"), by and through their undersigned attorneys, will move for an award of attorneys' fees in the amount of $3,040,842.25 and costs in the amount of $98,756.08. The motion will be based on the Federal Rules of Civil Procedure, the foregoing notice, points and authorities, and declarations and exhibits filed concurrently herewith, and the pleadings, records and files in this action.

DATED:  April 8, 2013         HADSELL STORMER
                              RICHARDSON & RENICK LLP

                                   By: s/ Randy Renick

                              Attorneys for Plaintiffs Raudel Covarrubias,
                              David Simmons, and Stephen S. Swader Sr.

                              GILBERT & SACKMAN
                              A Law Corporation

                                   By: s/ Joshua F. Young

                              Attorneys for Plaintiff USW

# TABLE OF CONTENTS

**PAGE(S)**

I.  INTRODUCTION AND SUMMARY OF ARGUMENT ...........................1

II. BACKGROUND ........................................................................................2

    A.  Pertinent Procedural History ........................................................2
    B.  Plaintiffs' Claims regarding the Failure to Provide Meal Breaks .........3
        1.  Operators and Laboratory Workers on 12-Hour Shifts Work on a Rotating Shift Schedule..........................................................3
        2.  ConocoPhillips Implements Some Changes to the Meal Break Policies in 2009...............................................................................4
    C.  Parties ..............................................................................................5
        1.  Defendants ..............................................................................5
        2.  Class Representatives..............................................................5
    D.  Discovery and Investigation Conducted by Plaintiff .........................6
    E.  Settlement Terms ............................................................................6
        1.  Total Settlement Fund .............................................................6
        2.  Additional Compensation for Active Litigants.........................6
        3.  Attorney's Fees and Costs........................................................7

III. ARGUMENT...........................................................................................7

    A.  The Proposed Class Settlement is the Product of Serious, Informed, Non-Collusive, and Good-Faith Negotiations.......................................7
    B.  Attorneys' Fees Of 20% of the Settlement Are Reasonable And Appropriate.................................................................................................8
        1.  An Award of Fees Under the Common Fund Doctrine is Proper Here…..............................................................................8
        2.  The Loadstar Method................................................................9
        3.  Percentage of The Fund Rule……………..............................................................................10
    C.  Plaintiff's Request for Reimbursement of Costs Is Reasonable and Proper ...................................................................................................12

IV. CONCLUSION………………………………………………….....13

# CASES

**PAGE(S)**

*Bell v. Farmers Insurance Exchange*,
   115 Cal.App.4th 715 (2004) ...................................................................................12

*Blum v. Stenson,*
   465 U.S. 886 (1984).................................................................................................8

*Boeing Co. v. Van Gemert,*
   444 U.S. 472 (1980).................................................................................................8

*Bussey v. Affleck,*
   225 Cal.App.3d 1162 (1990) .................................................................................12

*Central R.R. & Banking Co. v. Pettus*,
   113 U.S. 116 (1885).................................................................................................8

*Dunk v. Ford Motor Co.*,
   48 Cal.App.4th 1794 (1996) ....................................................................................9

*Fischel v. Equitable Life Assur. Soc'y*,
   307 F.3d 997 (9th Cir. 2002) ...................................................................................9

*Glass v. UBS Fin. Servs.*,
   331 Fed. Appx. 452 (9th Cir. 2009)........................................................................11

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...........................................................................8, 11

*In re Businessland Sec. Litig.*,
   Case No. 90-20476 RFP, (N.D. Cal. 1991). ..........................................................12

*In re FPI/Agretech Securities Litigation*,
   105 F.3d 469 (9th Cir.1997) ....................................................................................9

*In re GNC Shareholder Litig.*,
   668 F.Supp. 450 (W.D. Pa. 1987)..........................................................................12

1  *In re Warner Communications Sec. Litig.*,
2     618 F.Supp. 735 (S.D.N.Y. 1985) ................................................................. 12
3  *In re Washington Public Power Supply System Sec. Litig.*,
4     19 F.3d 1291 (9th Cir. 1994) .................................................................. 8, 9
5  *Internal Imp. Fund Trustees v. Greenough,*
6     105 U.S. 527 (1881) .................................................................................. 8
7  *Lealao v. Beneficial California, Inc.*,
8     82 Cal.App.4th 19 (2000) ......................................................................... 9
9  *Mills v. Elec. Auto-Lite Co.*,
10    396 U.S. 375 (1970) ............................................................................ 8, 12
11 *Paul, Johnson, Alston & Hunt v. Graulty*,
12    886 F.2d 268 (9th Cir.1989) ................................................................... 11
13 *Powers v. Eichen*,
14    229 F.3d 1249 (9th Cir. 2000) .................................................................. 9
15 *Serrano v. Priest,*
16    20 Cal.3d 25 (1977) ........................................................................... 9, 11
17 *Shaffer v. Cont'l Cas. Co.*,
18    362 Fed. Appx. 627 (9th Cir. 2010) ........................................................ 11
19 *Six Mexican Workers v. Ariz. Citrus Growers*,
20    904 F.2d 1301 (9th Cir.1990) ................................................................. 11
21 *Steiner v. Am. Broad. Co.*,
22    248 Fed. Appx. 780 (9th Cir. 2007) ........................................................ 11
23 *Torrisi v. Tucson Elec. Power Co.*,
24    8 F.3d 1370 (9th Cir.1993) ..................................................................... 11
25 *Vincent v. Hughes Air West*,
26    557 F.2d 759 (9th Cir. 1977) .................................................................. 12
27
28

*Vizcaino v. Microsoft*,
   290 F.3d 1043 (9th Cir. 2002) ............................................................................. 9, 11

*Wininger v. SI Management L.P.*,
   301 F.3d 1115 (9th Cir. 2002) ................................................................................. 9

**STATUTES**

Cal. Bus. & Prof. Code §17200 ..................................................................................... 2

Cal. Labor Code § 226.7 ................................................................................................ 2

**MISCELLANEOUS**

Conte, *Attorney Fee Awards*,
   § 2.08 at pp. 50-51 (2d Ed. 1977) ........................................................................... 12

H. Newberg, *Attorney Fee Awards,*
   § 2.19 at 69 (1986) ................................................................................................. 12

Industrial Welfare Commission Wage Order No. 1-2001 .............................................. 2

**TABLE OF CONTENTS AND TABLE OF AUTHORITIES**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs Raudel Covarrubias, David Simmons, and Stephen S. Swader, Sr., and Plaintiff United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial & Service Workers International Union, AFL-CIO, CLC ("USW"), on behalf of themselves and the classes which have been certified herein, submit this memorandum in support of the award of attorney's fees in the amount of $3,040,842.25 and costs in the amount of $98,756.08 from the $15,500,000 settlement reached in this action.

The fees and costs are sought in connection with a proposed $15.5 million class action settlement ("Settlement") of wage and hour claims brought on behalf of refinery Operators and Lab Workers employed in California between February 14, 2004 and September 24, 2012 against their employer, Phillips 66, formerly known as the ConocoPhillips Company ("ConocoPhillips"). The settlement was preliminarily approved by this Court on December 21, 2012.

Considering the excellent result achieved, along with the risks involved in litigating a large wage and hour class action case, the sophistication of the work performed, and the complex legal issues involved, the requested fee is justified under a percentage of the fund analysis. With a rate lodestar of $3,040,842.25 the cross-check yields a multiplier of 1.0, demonstrating that a 20% fee award is reasonable and in accord with case law.

The settlement was reached after four and one-half years of extensive and hard-fought litigation. During that time the parties conducted extensive discovery and engaged in protracted motion practice, including the filing of three motions for summary judgment, two consolidated appeals, and three motions for class certification. The case settled shortly before Plaintiffs' affirmative motion for summary judgment was to be heard and just weeks prior to the start of trial. As a result of the work put into

this case, Plaintiffs' counsel had sufficient information to determine the likely range of outcomes should this matter have gone to trial. The resolution was the result of arms-length negotiations and two full day mediation sessions with David Rotman, a highly skilled and experienced mediator. It is an excellent result in light of all the relevant circumstances. Accordingly, Plaintiffs respectfully request that the Court grant an award of attorneys' fees and costs.

## II.   BACKGROUND

### A.   Pertinent Procedural History

The complaint in this matter was filed in Los Angeles Superior Court on February 15, 2008, and removed to the United States District Court for the Central District of California on March 27, 2008 under the Class Action Fairness Act, 20 U.S.C. §§ 1332(d), 1453. The complaint alleges violations of California wage and hour laws based on ConocoPhillips' failure to provide to certain classes of employees a "thirty minute meal period totally relieved of all duties." Complaint at ¶25. The complaint states two state law causes of action for relief: 1) California Labor Code Section 226.7 and Section 11 of the Industrial Welfare Commission Wage Order No. 1-2001, and 2) Cal. Bus. & Prof. Code §17200, with a four year statute of limitations.

On October 27, 2011, this Court certified two subclasses

> All former, current, and future non-exempt hourly employees of Conoco who, at any time since February 15, 2004, worked as an operator on a shift schedule at a Conoco petroleum refinery located in Los Angeles, Santa Maria, or Rodeo, California; and

> All former and current non-exempt hourly employees of Conoco who, at any time from February 15, 2004 through June 8, 2009, worked in the laboratory on a shift schedule at a Conoco petroleum refinery located in Los Angeles, Santa Maria, or Rodeo, California.

[Dkt. #326, at 18].

On April 30, 2012, Plaintiffs filed a motion for summary judgment. Prior to the hearing on the motion, the parties mediated with David Rotman of Gregorio, Haldeman

& Rotman on February 15, 2012, and again on May 8, 2012.[1] While an agreement in principle based upon a mediator's proposal was reached shortly after the mediation, it took the parties an additional six months to negotiate the final terms of the agreement and reduce it to writing. ("Settlement Agreement" attached as Exh.1 to the Renick Declaration).

### B. Plaintiffs' Claims regarding the Failure to Provide Meal Breaks

#### 1. Operators and Laboratory Workers on 12-Hour Shifts Work on a Rotating Shift Schedule.

ConocoPhillips Company ("ConocoPhillips") operates two refineries in California, one in Los Angeles (consisting of the Carson and Wilmington facilities) and the other in San Francisco (consisting of the Rodeo and Santa Maria facilities). Each refinery operates continuously, 24 hours a day, seven days a week. The oil refining process is a dangerous operation that involves hazardous substances and has the potential for catastrophic consequences if something goes wrong. Operators and certain Laboratory Workers work 12-hour shifts on a "rotating shift schedule," and are referred to as "shift employees." (Renick Decl. at ¶¶ 9-10).

There are two types of Operators: Console (also known as "Board" or "Inside") Operators and Field (or "Outside") Operators. Console Operators sit at control boards, called "consoles," inside a control facility and monitor and make adjustments to the levels, pressures, temperatures, and other indicators on equipment, products, and processes in their units to ensure that the units are operating properly. Outside Operators work outside in the units and in satellite operating shelters and they are responsible for maintaining, monitoring, inspecting, and making adjustments to equipment at the direction of Console Operators and supervisors. To keep the refineries operating continuously, each unit has four crews of Operators who rotate between day and night shifts. Every crew on every shift must have certain minimum "crew

---

[1] The parties also mediated with Steven Rotman, Esq. on May 18, 2009.

positions" filled by an Operator at all times. (Renick Decl. at ¶ 10).

Laboratory Workers are responsible for running tests and analyses on samples of products made at the refinery, testing waste products to ensure they meet environmental specifications, and, when there is a unit upset, testing samples that Operators must rely on to bring the unit back within specification. Laboratory workers manage quality control of the oil products made in the refineries, analyze samples, and run tests on samples. (Renick Decl. at ¶ 11).

Both Operators and Lab Workers on a 12-hour shift remain responsible for their units throughout their shifts. ConocoPhillips' written policies require Operators and Lab Workers to remain on the refinery premises and in or near their work areas throughout their shifts. Before leaving their area unit, they must obtain permission from their supervisor or have "proper authorized relief." Operators who leave their area or unit while still on their shift must carry their radios. Under the parties' 12-Hour Shift agreement, Operators and Lab Workers do not have designated or scheduled 30-minute periods during which they are expected to take their meal periods. Operators and Lab Workers typically eat at their work stations, or in the kitchen located near their work stations, when their work allows. (Renick Decl. at ¶ 12).

### 2. ConocoPhillips Implements Some Changes to the Meal Break Policies in 2009.

At different junctures in 2009, after this action was filed, ConocoPhillips took actions affecting the meal break policies applicable to Operators and Lab Workers. The refineries are covered by a single collective bargaining agreement between ConocoPhillips and USW. On February 6, 2009, after ConocoPhillips made a last, best, and final offer in bargaining over a new CBA, employees agreed to a CBA containing an "on-duty meal period agreement" drafted by ConocoPhillips covering Operators.[2]

---

[2] In March 2009, ConocoPhillips also implemented a procedure for paying for missed meal periods. SUF 27. Plaintiffs dispute that this practice is sufficient to comply with California law's requirement for penalty pay. There is no dispute,

4

(Renick Decl. at ¶13).

Throughout this litigation, the Individual Plaintiffs have disputed the validity of the "on duty meal period agreement" for a variety of reasons, including the fact that the on-duty meal agreement contemplates that employees *could* receive off-duty meals if ConocoPhillips chose to provide relief.  On June 8, 2009, ConocoPhillips also changed the Lab Workers' shift schedules.  On that date, Lab Workers began a 13-hour shift during which they received 30-minute meal periods relieved of all duty.  Until then, they had been required to remain on duty, in or near the laboratory, for the duration of their shifts unless they had permission to leave.  (Renick Decl. at ¶ 15).

### C. Parties

#### 1. Defendants

Phillips 66, formerly known as the ConocoPhillips Company ("ConocoPhillips") operates two refineries in California, one in Los Angeles (consisting of the Carson and Wilmington facilities) and the other in San Francisco (consisting of the Rodeo and Santa Maria facilities).

#### 2. Class Representatives

All three Class Representatives are currently employed by Defendant.  Raudel Covarrubias is currently employed as an Operator at the Los Angeles refinery.  Stephen Swader, Sr., is currently employed as an Operator at the Santa Maria refinery.  Plaintiff David Simmons is employed as an Operator at the Los Angeles refinery, though his most recent assignment is to act as the Union's Health & Safety Representative.  In its Order granting Class Certification, this Court found the three named Plaintiffs to be adequate representatives of the class under Rule 23(a). [Dkt. 326, Pages 1-12] (Renick Decl. at ¶¶ 27-30).

---

however, that ConocoPhillips did not pay Operators or Lab Workers an extra hour of pay for a missed meal period prior to March 2009.

5

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES AND COSTS

### D. Discovery and Investigation Conducted by Plaintiff

During the course of litigation in this matter the parties engaged in extensive formal discovery. Specifically, the parties took 18 depositions, including 5 depositions of Defendant's managers and supervisors. Plaintiffs served 3 separate Requests for Production on Defendant while Defendant served 6 separate Requests for Production on the Plaintiffs. Plaintiffs served one set of Special Interrogatories on Defendant containing 25 separate questions while Defendant served one set with 19 questions on Plaintiffs. ConocoPhillips produced over 119,000 pages of documents including disciplinary reports and actions, policies, manuals, and collective bargaining agreements. In addition, Defendant produced spreadsheets and database reports and documents showing each shift worked by each class member and the applicable rate of pay for each shift during the class period. Plaintiffs retained Todd Stefan of Setec Investigations to organize, maintain and evaluate the timecard and payroll data. Based on all of the evidence obtained, Plaintiffs developed a sophisticated damage analysis modeling the damages they were likely to recover at trial applying a number of different assumptions and scenarios. (Renick Decl. at ¶¶ 16-17).

### E. Settlement Terms

#### 1. Total Settlement Fund

The total settlement amount is Fifteen Million, Five Hundred Thousand Dollars ($15,500,000). (Exh. "1," ¶18).

#### 2. Additional Compensation for Active Litigants.

In recognition of the risks and burdens undertaken by the named Plaintiffs and those class members who actively participated in the litigation, mediations and settlement of this case, the settlement provides additional compensation in an amount not to exceed $15,000 for each to the three Named Plaintiffs. This payment shall be in addition to whatever portion of the settlement proceeds each such individual is otherwise entitled to receive. The enhancements are intended to compensate these individuals fairly in relationship to the rest of the class in light of the additional burdens

and risks they have undertaken by assisting in the prosecution of the lawsuit.(Exh. "1," ¶24).

### 3.  Attorney's Fees and Costs.

The settlement agreement provides for the payment of attorneys' fees in an amount not to exceed one-third (33.3%) of the total settlement fund ($5,133,333.33), litigation costs up to $200,000 and the costs of claims administration, estimated at $59,000.  Plaintiffs, however, limit their fee request to their actual lodestar of $3,040,842.25 or 20%, plus costs of $98,756.08 and costs of administration. (Exh. "1," ¶25).

## III.  ARGUMENT

### A.  The Proposed Class Settlement is the Product of Serious, Informed, Non-Collusive, and Good-Faith Negotiations

The proposed class settlement is the result of more than four years of litigation between the Parties.  The Parties have deposed 18 witnesses related to the meal period policies and practices at Defendant's California refineries, produced and reviewed over 100,000 pages of documents and responded to dozens of interrogatories and requests for admission.  In addition, Plaintiffs retained forensic computer experts Setec Investigations to sort, evaluate and analyze the class-wide shift and payroll information produced by Defendants for the hundreds of thousands of shifts at issue.  Class Counsel worked closely with USW bargaining representatives to gain knowledge about the meal period policies and practices and the general working conditions of shift employees at each of the work sites included in the proposed settlement.  (Renick Decl. at ¶¶ 17-18).

Settlement negotiations in this case were conducted over several months and, at all times, were adversarial, non-collusive, in good faith, and at arms' length.  Both during and after the mediations, the Parties continued to exchange written proposals and discuss settlement terms through their counsel. Class Counsel sought and obtained input from the Named Plaintiffs in this case regarding the terms of a proposed settlement and,

given the need for modifications to existing CBA in order to change ongoing meal period policies and practices, the USW was actively involved in the negotiation and approval of the "going-forward" aspects of the settlement. As this Court is well-aware, throughout the course of this litigation, the Parties engaged in vigorous, and often highly contentious, litigation, including the filing of cross-motions for summary judgment, appeals and trial preparation. (Renick Decl. at ¶¶ 31-53).

### B.  Attorneys' Fees Of 20% of the Settlement Are Reasonable And Appropriate

#### 1.  An Award of Fees Under the Common Fund Doctrine is Proper Here

Counsel who represent a class and produce a benefit for class members are entitled to compensation. As the Supreme Court stated, "this Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). *See also Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393 (1970); *Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 123 (1885). In *Blum v. Stenson*, the Supreme Court recognized that under the "common fund doctrine" a reasonable fee may be based "on a percentage of the fund bestowed on the class." 465 U.S. 886, 900 n.16 (1984). The purpose of this doctrine is that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Public Power Supply System Sec. Litig.,* 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*"). The "common fund doctrine" is firmly rooted in American case law. *See, e.g., Internal Imp. Fund Trustees v. Greenough,* 105 U.S. 527 (1881); *Central R.R.*, 113 U.S. at 123. The amount of the award of reasonable attorneys' fees and expenses is within the sound discretion of the district court. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *WPPSS*, 19 F.3d at 1296. In the Ninth Circuit, the district court has discretion in a common fund case to choose either the "percentage-of-the-fund" or the "lodestar"

method in calculating fees. *Fischel v. Equitable Life Assur. Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002); *Wininger v. SI Management L.P.*, 301 F.3d 1115, 1123-24 & n.9 (9th Cir. 2002); *Vizcaino,* 290 F.3d at 1047; *WPPSS*, 19 F.3d at 1296.

The Settlement Agreement provides for attorney's fees up to one-third of the total settlement of $15,500,000, which is $5,133,333. Plaintiffs, however, limit the fees sought to the actual lodestar incurred, $3,040,842.25, which is 20% of the total settlement reached in this matter. (Renick Decl. at ¶ 55).

### 2. The Lodestar Method

The district court has broad discretion in assessing the reasonableness of attorneys' fees in class actions. *In re FPI/Agretech Securities Litigation*, 105 F.3d 469, 472 (9th Cir.1997); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). In common fund cases, fees may be awarded based either on a percentage of the fund or the lodestar method. *Vizcaino v. Microsoft Corporation,* 290 F.3d 1043, 2002 U.S. App. LEXIS 9188 *4 (9th Cir. 2002).

While the percentage-of-the-fund model is oftentimes used as a means to determine the fee, state and federal courts also determine fees based on the lodestar model. That application was described by the Ninth Circuit in *Vizcaino v. Microsoft* (9th Cir. 2002) 290 F.3d 1043, in which the court stated that: "[while] the primary basis of the fee award [in common fund cases] remains the percentage method," reference to the lodestar "may provide a use useful perspective on the reasonableness of a given percentage award." *(Id.* at 1050.) The lodestar reference takes into account the hours worked and the attorney's hourly rates. *(Serrano v. Priest,* 20 Cal.3d at 48-49, fn. 3; *Lealao v. Beneficial California, Inc*., 82 Cal.App.4th 19, *Dunk v. Ford Motor Co.*, *supra*, 48 Cal.App.4th 1794 (1996) at p. 1810.

Class counsel's current lodestar at applicable current market rates totals $3,040,842.25. (Renick Decl. ¶¶55-56).

While Plaintiffs do not seek a multiplier, each of the factors used to determine

augmentation of the lodestar exist here including the difficulty of the questions involved and the skill displayed in presenting them; the extent to which the nature of the litigation precluded other employment by the attorneys and the contingent nature of the fee award based on the uncertainty of prevailing on the merits and establishing eligibility for the award.

First, litigation of this case precluded class counsel from taking other cases. Each of the firms handling the litigation, Gilbert Sackman, a Law Corporation, Hadsell Stormer Richardson & Renick, LLP and Quinn Connor Weaver Davies & Rouco LLP are smaller firms with less than 12 lawyers each. As a result, the number of cases each of the firms is able to take is limited and the three firms are extremely selective about the cases they do take. Class counsel must regularly decline to take cases which it believes are meritorious and but for the issue of staffing, would otherwise accept. Taking on larger class action cases, such as the present case, utilizes a significant portion of the firms' staff and resources and prevents the firm from taking cases which are likely to be equally or more remunerative than the present case. (Renick Decl. ¶ 71).

Second, the contingent nature of this case presented a material risk for class counsel. Wage and hour class action cases such as the present involve a number of complex and unsettled legal issues. (Renick Decl. ¶76).

Finally, the lodestar analysis looks to the experience, reputation, and ability of the Class counsel as well as the skill they displayed in litigation. All three firms in this litigation are preeminent Plaintiff and Union Side Labor and Employment firms in Southern California. (Renick Decl. ¶¶ 19-22).

Based on the criteria, an award of lodestar is appropriate here.

### 3. PERCENTAGE OF THE FUND RULE

Here, the requested fee award is 20% of the Settlement Fund. This is below the 25% benchmark established by the Ninth Circuit as the "benchmark" award for percentage-based fee recoveries. *Vizcaino,* 2002 U.S.App. LEXIS 9188 at *15

(approving 28% contingency award of $27,127,800); *Shaffer v. Cont'l Cas. Co.*, 362 Fed. Appx. 627, 631-632 (9th Cir. 2010) (Citing *Vizcaino* with approval and confirming that 25% is the benchmark for awarding attorneys' fees from a common fund and affirming district court's award of a 1.4 multiplier); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir.1990) (20-30 percent is usual common fund award); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir.1989).

Such a fee is intended to reward class counsel not only for the hours they spent on the case to the date of the settlement, but for carrying the financial burden of the case, effectively prosecuting it and, by reason of their expert handling of the case, achieving a just settlement for the class. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir.1993), *cert. denied* 512 U.S. 1220 (1994).

Moreover, the 25% is based on the total settlement amount, not the amount actually collected by the class. *Glass v. UBS Fin. Servs.*, 331 Fed. Appx. 452, 456-457 (9th Cir. 2009) (Citing *Vizcaino* with approval and affirming attorneys' fees award of 25% of total recovery. Holding that "the court's calculation of 25% of the total award, rather than 25% of the amount actually collected by the class, was proper, and was in line with Ninth circuit precedent," *citing Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1029 (9th Cir. 1998)). In addition, the 25% applies in cases such as the present that were resolved early in the litigation cycle. *Steiner v. Am. Broad. Co.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (affirming attorneys' fees award of 25% of the total recovery and a 6.85 multiplier).

California law is in accord. In *Serrano v. Priest* (1977) 20 Cal.3d 25, 34, the California Supreme Court held that:
> where a number of persons are entitled in common to a specific fund, and an action brought by a plaintiff or plaintiffs for the benefit of all results in the creation or preservation of that fund, such plaintiff or plaintiffs may be awarded attorneys' fees out of the fund.

*See also Bell v. Farmers Insurance Exchange* (2004) 115 Cal.App.4th 715 (25% fee awarded from $90 million dollar fund).

### C. Plaintiff' Request For Reimbursement Of Costs Is Reasonable And Proper

In total, as set forth in the declarations of counsel to this Court, Plaintiffs' counsel has incurred $98,756.08 in unreimbursed expenses in prosecuting this case. Those costs are detailed in counsel's declarations. All of these costs and expenses were reasonable and necessary to bring this case to closure. (Renick Decl. ¶ 80).

Under the common fund doctrine, Plaintiffs' Counsel are entitled to reimbursement of all reasonable out-of-pocket expenses and costs in prosecution of the claims and in obtaining a settlement. *Vincent v. Hughes Air West*, 557 F.2d 759, 769 (9th Cir. 1977). Reasonable reimbursable litigation expenses include: those for document production, experts and consultants, depositions, translation services, notice, claims administration, and trial exhibits, among other things. *See*, *e.g.* H. Newberg, *Attorney Fee Awards* § 2.19 at 69 (1986); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. at 391-92 (1970).

As one commentator noted, "the prevailing view is that expenses are awarded in addition to the fee percentage." (Conte, Attorney Fee Awards, § 2.08 at pp. 50-51 (2d Ed. 1977).) Indeed, courts routinely reimburse class counsel for the costs incurred in prosecuting cases on a contingent fee basis. (See; *In re Businessland Sec. Litig.*, (N.D. Cal. 1991) Case No. 90-20476 RFP, slip. op. at p. 4 and cases cited therein; *In re Warner Communications Sec. Litig*. (S.D.N.Y. 1985) 618 F.Supp. 735, *aff'd*, (2d. Cir. 1986) 798 F.2d 35; *In re GNC Shareholder Litig*. (W.D. Pa. 1987) 668 F.Supp. 450, 452.) The recovery of costs is to include all out of pocket costs not part of overhead which are typically billed to a client. *(Bussey v. Affleck* (1990) 225 Cal.App.3d 1162.) All of the categories of costs sought here are typically billed to a client. (Renick Dec. at ¶80).

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs and Co-Lead Class Counsel request that this Court award:

1. Attorney fees in the amount of $3,040,842.25, which constitutes 20% of the $15,500,000 Settlement; and
2. Costs of $98,756.08 necessarily incurred in connection with the prosecution of this action.

DATED: April 8, 2013         HADSELL STORMER
                             RICHARDSON & RENICK LLP

                             By: s/ Randy Renick

                             Attorneys for Plaintiffs Raudel Covarrubias,
                             David Simmons, and Stephen S. Swader Sr.

                             GILBERT & SACKMAN
                             A Law Corporation

                             By: s/ Joshua F. Young

                             Attorneys for Plaintiff US